## Hlawati, Appellant, *v.* Maeder-Hlawati Co. et al.

*Corporations — Receivers — Dissension among stockholders — When receiver will not be appointed—Solvent corporations—Dissolution—Reduction of stock—Declaration of dividends—Discretion — Misappropriation of funds — Actions — Parties —Minority stockholder Acts of June 8, 1893, P. L. 351, and April 22, 1905, P. L. 264.*

1. A receiver will not be appointed for a solvent corporation on the ground of dissension among stockholders as to the manner of administration or conduct of the business, unless the dissension has become so great as to make impossible the carrying out of the chartered purposes of the company.

2. A court of equity has no power to dissolve a solvent corporation upon a bill filed by a minority stockholder. The method of dissolution is provided by the Act of April 9, 1856, P. L. 293.

3. A court of equity has no power to reduce the capital stock of a corporation and to distribute the surplus among the stockholders. The method of reducing stock is provided by the Act of June 8, 1893, P. L. 351, as amended by the Act of April 22, 1905, P. L. 264.

4. The declaration of dividends, or the making of other payments is within the discretion of the board of directors, and its conclusions are not to be interfered with unless an abuse of discretion be shown.

5. Even if there be a misappropriation of funds belonging to the corporation, a minority stockholder cannot sue directly for his proportionate share of the amount taken, but he may compel repayment to the treasury of the corporation.

Argued March 15, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART and SADLER, JJ.

Appeal, No. 6, March T., 1927, by plaintiff, from decree of C. P. Allegheny Co., Jan. T., 1926, No. 3405, dismissing bill in equity in case of E. G. Hlawati v. Maeder-Hlawati Co. et al. Affirmed.

Bill for dissolution of corporation, for receiver, and for reduction of capital stock. Before SWEARINGEN, J.

The opinion of the Supreme Court states the facts.

Bill dismissed. Plaintiff appealed.

*Error assigned* was decree, quoting it.

*R. B. Ivory,* for appellant.—A minority stockholder in a corporation like this, who is excluded from the management of the business by the majority stockholder, without cause, has standing to file a bill and the court should decree a dissolution.

*Arthur M. Scully,* of *Burgwin, Scully & Burgwin,* for appellees.—A court of equity has no power to dissolve a solvent corporation on a bill filed by a minority stockholder: Road Co. v. McConaby, 16 S. & R. 140; Gring

v. Water Co., 270 Pa. 232; Murphy v. Schuyikill Co., 20 Pa. 415.

A court of equity has no power to reduce the capital stock of a corporation and to distribute the surplus among the stockholders: Beeber v. Wilson, 285 Pa. 312.

OPINION BY MR. JUSTICE SADLER, April 11, 1927:

The plaintiff, Hlawati, was engaged in the merchant tailoring business in the City of Pittsburgh, and had as a silent partner one Coulter. On December 7, 1916, the parties named entered into a written contract with Fred Maeder by which it was agreed that the old firm should be dissolved, and Coulter paid the value of his interest in the goods on hand, the cash for this purpose to be advanced by Maeder, and all the merchandise transferred to him. The latter agreed to turn this over to a corporation to be formed with a capital of approximately $15,000. It was understood that stock to the amount of $6,000 would be issued to the present complainant, representing the value of his share of the goods to be delivered, and salary due, and of about $9,000 to Maeder for money advanced to pay the other partner for his share in the assets of the firm. Maeder also agreed to loan the new corporation a sum not exceeding $5,000, and he was to become treasurer, and have control of the company's finances. Hlawati was to be elected president and secretary, and the salary of each party was determined on.

The Maeder-Hlawati Company was formed in accordance with the understanding, first with capital stock of $5,000, immediately increased to $15,000, and again, in 1923, to $100,000, and 630 shares were issued. Of this number, 100 were sold, in June of that year, to another party, Martin, at par, and the holdings of Maeder and Hlawati increased by the declaration of a stock dividend. After that date Maeder owned 316 shares, Hlawati, 212.5; J. F. Maeder, 1.5; Frey, 2, and Martin, 100. At the time of the last-mentioned purchase all par-

ties agreed individually, the corporation not being a party, that if any one should desire to sell, die, become bankrupt, or have execution issued against him, the respective holdings of stock should first be offered for sixty days to the others, but there was no requirement on the part of any one to exercise the option and purchase.

Martin was placed in charge of a newly-established "Ready to Wear" department, which for a time was conducted at a profit, but eventually discontinued, and the stock of goods then on hand disposed of at a loss, whereupon Martin severed his connection with the corporation. The shares held by him were returned to the company, and have never been reissued. In the meantime, the company's general business had been successfully conducted, and there was accumulated a surplus in excess of $50,000, which was safely invested in corporate and United States bonds, and held to meet contingencies which might arise.

On July 16, 1924, Hlawati tendered his resignation to take effect at once, and requested that his stock be taken over for the price of $15,000, expressing the desire to open an establishment of his own, which he subsequently did. Maeder endeavored to have him return, but without effect. Plaintiff offered to take certain merchandise in part payment of the stock owned, and the majority stockholder suggested this arrangement would be satisfactory, but later changed his mind, and refused to buy the interest tendered. Thereupon, without attempting to obtain redress of any alleged grievances through the medium of the corporation, complainant filed a bill in equity, asking that the company be dissolved, and a receiver appointed to take over the assets, convert them into cash and distribute the proceeds proportionately among the stockholders. An additional prayer was for the reduction of the capital stock to an amount actually needed for the conduct of the company's business, and that the surplus be distributed to the stockholders.

As a foundation for the relief asked, it was set forth that the relation of the parties was that of partners, and there was an enforceable agreement that the stock of one withdrawing should be repurchased, though, as before observed, and found by the court, it was a corporation, and the contract referred to merely provided for an option to the other stockholders to buy as individuals, if they so desired. It was further insisted that so much bad feeling had been engendered between plaintiff and Maeder as to make the joint conduct of business impossible, and alleged that the latter had been guilty of fraud in disposing of the goods acquired for the "Ready to Wear" department, in fixing the amount of the inventory, though the same was corrected and assented to without objection, and also that accounts against purchasers had been improperly charged off. All of these allegations of fraud were found by the court to be without foundation, as was also the claim that complainant had been refused access to the books of the corporation, of which he, as secretary, was custodian, until he withdrew from the company. Thereafter he could have secured permission to inspect, if desired, by proper legal proceedings, if unreasonably denied the opportunity. An examination of the testimony shows the findings of fact of the learned court below to be sustained by competent evidence, and we are therefore bound thereby, in consideration of the legal questions presented: Miller v. Central Trust & Savings Co., 285 Pa. 472. The burden was on plaintiff to clearly prove the fraud alleged, and in this attempt he failed completely.

The defendant company in the present case is solvent, and relief from supposed wrongful conduct in the management of its business is asked. A careful review of the authorities defining the rights of the parties under such circumstances will be found in 43 A. L. R. 243 to 317. We content ourselves principally with reference to the decisions of our own State. An examination of the rulings justifies the statement that a receiver may be ap-

pointed for a financially sound corporation, where the necessities of the case demand this to be done to protect the rights of minority stockholders; and, where actual fraud can be established, such order will be made: Cunliffe v. Cons. Assn., 280 Pa. 263; Treat v. Pa. Mut. Life Ins. Co., 203 Pa. 21. Mismanagement may be such as to justify the appointment (Cowan v. Plate Glass Co., 184 Pa. 1; 11 Fletcher on Corp. 1511), as is true where the attempt is made by those in control to manipulate the assets for their own benefit: Schipper Bros. v. Economy Co., 277 Pa. 356. But, ordinarily, this will not be directed on the ground of dissension among stockholders as to the manner of the administration or conduct of the business (2 Savidge on Corp. 886; Crombie v. Order of Solon, 157 Pa. 588), unless the division has become so great as to make impossible the carrying out of the chartered purposes: 14a C. J. 955; Bowen v. Bowen-Romer Flour Mills Corp., 114 Kan. 95, 43 A. L. R. 238. In such cases, if the parties fail to adjust their differences, the receiver appointed may be directed to convert the assets and distribute to those entitled to share (Schipper Bros. v. Economy Co., supra), or the bill filed may be retained for the protection of those aggrieved: Gilmore v. Gilmore Drug Co., 279 Pa. 193; Devine v. Frankford Steel & Forging Co., 205 Pa. 114. There were no sufficient grounds shown by the complainant in the present case to warrant the appointment of a legal custodian of the property of the corporation, and this finding of the learned court below must be approved.

The application here made was for a dissolution to be effected by the appointment of a receiver to take over the assets, convert them into cash, and distribute in accordance with the interest of the stockholders. Where the public is concerned (8 Fletcher on Corp. 9067) a proceeding to dissolve must be instituted by the attorney general on behalf of the State (Gring v. Sinking Spring Water Co., 270 Pa. 232), though, if the grounds on which the prayer is based deal merely with the administration

of corporate functions, the use of his name by an individual aggrieved may be permitted: Murphy v. Farmers Bank, 20 Pa. 415. In the absence of a statute, the minority stockholder has ordinarily no standing to ask a winding up of the affairs of a company (Lyon v. McKeefrey, 171 Fed. 384; Brictson Mfg. Co. v. Close, 280 Fed. 297; 14a C. J. 948); the method of ending corporate existence in Pennsylvania is fixed by Act of Assembly. Nor can the court order a reduction of the capital stock, as here asked, which is to be effected only at the instance of a majority in interest (Act April 22, 1905, P. L. 264, amending Act June 8, 1893, P. L. 351), and in the mode directed by statute: 14 C. J. 828. Until there has been a dissolution, the court has no power to order a distribution of surplus, as requested in the present bill: 2 Savidge on Corp., 950. The declaration of dividends, or the making of other payments, is within the discretion of the board of directors, and its conclusions are not to be interfered with unless an abuse of discretion be shown: 14 C. J. 808, 828. Even if there be a misappropriation of funds belonging to the corporation, the minority stockholder cannot sue directly for his proportionate share of the amount taken, but may compel repayment to the treasury of the corporation: Beeber v. Wilson, 285 Pa. 312.

In view of the findings of fact made by the court below, we are convinced that none of the prayers of the bill filed in this case can be granted, and the assignments of error are overruled.

The decree is affirmed at the cost of appellant.