Schuster, Appellant, *v.* Largman et al.

Argued April 12, 1932. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Joseph R. Embery,* with him *Howard I. James,* for appellant.—Where, prior to incorporation, parties entered into a written agreement fixing their relations with each other and with the corporation, one of the parties, with substantial stock holdings, may have equi-

table relief, where the two remaining parties to such agreement, in violation of the terms of the agreement, (a) wrongfully discharge him from employment by the corporation; (b) wrongfully exclude him from participation in the business of the corporation; (c) wrongfully usurp his duties and contractual rights; (d) wrongfully increase their own salaries; (e) cause great losses to the corporation by their lack of knowledge and experience; and (f) destroy the purpose for which the agreement was entered into: Lafean v. Caramel Co., 271 Pa. 276.

It is immaterial that plaintiff calls this fundamental agreement a partnership agreement to carry out a partnership in the form of a corporation. The essential thing about this fundamental agreement is that it secured to each of the parties certain contractual rights, both proprietary and property, and when these contractual rights of plaintiff were violated in the manner set forth in the bill, plaintiff was entitled to relief in a court of equity. However, under the decisions, it was entirely proper for plaintiff to allege that the fundamental agreement was an agreement to carry on a partnership in the form of a corporation: Christian's App., 102 Pa. 184; Stone v. Schiller B. & L. Assn., 302 Pa. 544; Brown v. B. & L. Assn., 302 Pa. 254; Cuppy v. Chocolate Co., 30 Pa. Dist. 394.

Agreements to form a corporation to carry on a business and stating the conditions and terms fixing the rights of the parties are enforceable notwithstanding such agreements do not constitute a partnership carried on in the form of a corporation. Some of these cases are: Fitzsimmons v. Lindsay, 205 Pa. 79; Lindsay's Est., 210 Pa. 224; Garrett v. Lawn Mower Co., 39 Pa. Superior Ct. 78; McDougall v. R. R., 294 Pa. 108; Love v. Clayton, 287 Pa. 205; Stony Brook L. Co. v. Blackman, 286 Pa. 305; Equitable Gas Co. v. Smith, 13 Pa. D. & C. 616; Kaplan v. Bagrier, 12 Pa. D. & C. 693.

If plaintiff is not entitled to equitable relief, the bill should have been certified to the law side of the court: Costley v. Smith, 278 Pa. 242.

If the bill showed a good cause of action but some of the averments were indefinite the bill should have been retained with leave to amend instead of being dismissed.

*I. J. Vanartsdalen,* of *Vanartsdalen & Biester,* with them *Louis E. Levinthal,* for appellee.—This was not a partnership: Jackson v. Hooper, 75 Atl. 568; Donnell v. Herring-Hall-Marvin Safe Co., 208 U. S. 267.

As the appellees view this bill, it simply sets forth the complaint of a stockholding employee complaining that he has been improperly discharged, and that the failure of the corporation to accept his labor policies, is depreciating the value of his stock, and that if his valuable services are lost, and his policies are ignored, and the present labor policy of the corporation continued, that it may be fatal to corporate life.

The references to fraud, incompetence, mismanagement, etc., are unsupported by the facts and are mere conclusions, and will not sustain the bill: Rice v. Braden, 243 Pa. 141; Levine v. Bank, 281 Pa. 477; Sullivan v. Emerick, 86 Pa. Superior Ct., 185; Kuntz's Est., 35 Pa. C. C. R. 245; Morrow v. Wilson, 28 Pa. Dist. 742; Kann v. Bennett, 234 Pa. 13.

A receiver will not be appointed for a solvent corporation on the ground of dissension among stockholders, as to the manner of administration or conduct of the business, unless the dissension has become so great as to make impossible the carrying out of the chartered purposes of the company: Hlawati v. Maeder-Hlwati Co., 289 Pa. 233; McDougall v. R. R., 294 Pa. 108; Whyte v. Faust, 281 Pa. 444, 446.

OPINION BY MR. JUSTICE MAXEY, June 30, 1932:

Appellant filed a petition in the court below against the defendant corporation and its two principal stock-

holders, alleging certain facts entitling him (so he claimed) to equitable relief, and praying for the appointment of receivers to administer the property of the corporation, to liquidate its assets, and to distribute the proceeds after sale, and for an injunction restraining the individual defendants from violating certain pleaded agreements. The defendants, both individual and corporate, filed preliminary objections, which were sustained, and the bill dismissed. This appeal followed.

The defendant corporation was organized in Pennsylvania in January, 1920, by the two individual defendants, Harry and Joseph Largman, and by plaintiff and one Gray, in pursuance of a written agreement. The corporation was to manufacture hosiery, and was to issue one thousand shares of common stock, each of one hundred dollars par value. Plaintiff was to have thirty shares, Gray two hundred, and the two Largmans the balance. Plaintiff was to be employed for one year to devote his full time and attention to the manufacturing branch of the business, at a stated salary of seventy dollars a week plus five per cent of the net profits. Gray was to manage the department of sales and distribution for one year at a salary plus ten per cent of the profits. Thereafter, their respective terms of employment were to be determined by a subsequent agreement, to be entered into between the parties. Plaintiff was given the option of purchasing, after incorporation, one hundred seventy additional shares from the Largmans; and Gray, sixty additional shares. The Largmans were to devote such time to the management of the business as their other interests permitted; they were each to receive salaries of fifty dollars a week and seventeen and one-half per cent of the profits. Neither Gray nor the plaintiff could alienate his stock, voluntarily or involuntarily; and the Largmans received options to purchase the stock in the event that either Gray or the plaintiff wished to sell it, or if their employment should terminate for any reason.

In April, 1920, after the corporation had been duly organized pursuant to this agreement, the plaintiff entered into two further written agreements with defendants; one of these was a contract of employment with the corporation alone, whereby the latter undertook to employ plaintiff for a term of three years beginning January 1, 1920, at a salary of eighty dollars a week and five per cent of the net profits per annum. The other was between plaintiff and all of the defendants. It makes specific reference to the agreement of employment entered into on the same day and declares that any breach of either agreement by plaintiff shall be deemed a breach of the other as well. It then repeats in detail the option granted to plaintiff in the pre-incorporation agreement to acquire one hundred seventy additional shares of common stock from the Largmans, and provides that payment for the first seventy shares shall be made out of the five per cent of the profits which plaintiff was to receive as salary and dividends on his original holdings. Plaintiff was therein prohibited from disposing of any of his stock, and the Largmans received an option to purchase his holdings in the event of his death or in the event of an attempted transfer of the stock by him, except to the Largmans. Such attempt, ipso facto, would terminate his employment. In case of any attempted transfer of this stock by plaintiff, the Largmans would thereby become entitled to purchase his stock at one-half of its book value. The term of the agreement was for three years from January 1, 1920. If the corporation did not earn net annual profits of at least ten per cent on all of the common shares, after payment of the dividend on the preferred stock, the Largmans were to have an option to purchase plaintiff's stock as above. The agreement provided further: "If, however, there has been such a net profit (including also said amount sufficient to cover the preferred stock dividend) averaged for said period so ascertained, then, unless at least a majority of the common stockholders of

the company shall, by a writing addressed to the company, indicate their desire that the agreement shall not be renewed (in which case it shall not be renewed), this agreement (and the employment agreement of said Schuster) shall thereby be renewed for a further term of three years, beginning as of January 1, 1923, and so on from three year term to three year term. If not so renewed, all the said shares of common stock then of the said Schuster shall be subject to an option of purchase by the said Harry Largman and (or) Joseph Largman ......and the price to be the book value plus twenty-five per cent of the book value additional, or if said aggregate would be less than the par value of said shares plus twenty-five per cent additional on said par, then the par value of said shares plus twenty-five per cent additional on said par value; if the last said option be not exercised, then the corporation shall be dissolved, unless the said Harry Largman and Joseph Largman and Schuster agree in writing on some other method of paying out the interest of said Schuster." The complaint sets forth that on January 1, 1923, by resolution of the board of directors, assented to by all of the parties, Gray's and plaintiff's salaries under the specific agreements referred to were cancelled and annulled, and power was granted the corporation to change their compensations from time to time with the assent of the employee; that in November, 1929, the Largmans purchased Gray's common stock, thereby so increasing their holdings that they owned all the outstanding stock except the two hundred shares held by plaintiff, the latter having increased his holdings under the option provision; that the by-laws provided for four directors, but since Gray sold out and left the company, there had been only three, to wit: plaintiff and the two Largmans; that from incorporation until March 6, 1931, plaintiff gave his whole time to his duties in handling the manufacturing work of the corporation; that the business of the corporation has prospered and increased, so that by

the end of 1930 the corporation possessed a plant worth upwards of one million dollars, with a surplus of three-quarters of that amount; that the Largmans by virtue of their majority control, have dominated the corporation's activities and have refused to elect a fourth director; that they so "harassed and coerced Gray and interfered with the performance of his duties" that he finally sold his stock to them at less than one-half of its value.

A series of allegations with respect to the breaches of the agreements constitute the basis of the prayers for relief. It is averred that the Largmans have "manifested a desire to oust plaintiff" from the corporation, and with that end in view interfered with his control of the work of manufacture, and deprived him of a voice in the management of the corporation in violation of the agreement set forth. They interfered with his handling of the company's employees, reduced wages against his wishes, so that a strike ensued, with great loss to the corporation. They "assumed to dominate the manufacture of the product of the corporation," ignored plaintiff, and deprived him of his control, with resulting losses to the company, which, it is alleged, will be augmented in the future. The Largmans are charged with "arbitrary and wilful" conduct in derogation of plaintiff's rights, with increasing their salaries, with the commission of costly errors, with destruction of the company's good will, and with visiting irreparable loss upon the corporation through their lack of practical knowledge and experience. On March 3, 1931, plaintiff received notice of a special meeting of the board of directors to be held to consider a resolution terminating plaintiff's employment by the corporation because he was "not giving his best efforts to the welfare of the business." This meeting was held on March 6th, and, over plaintiff's protest, the motion was carried; plaintiff was duly informed by letter of his discharge. Plaintiff denies that he failed to perform his duties faithfully under the employment

agreement. The final allegation is that the aforementioned conduct of the Largmans was in gross violation of the agreements between the parties, was unlawful, wrongful and fraudulent, and hence entitles plaintiff to demand a receivership of the corporation, with a view to the corporation's final dissolution and the distribution of its assets, and to surcharge the Largmans for losses incurred through their wrongful conduct, and to secure the issuance of a restraining order against them.

Plaintiff bases his claim for equitable relief on two general propositions, both of which are untenable in this proceeding. First, plaintiff invokes the jurisdiction of equity in his aid as the aggrieved member of a partnership excluded from his rightful participation in the partnership business. It is true that the bill of complaint referred to the agreements antedating and postdating the incorporation as partnership agreements, yet in none of them is mention made of a partnership. The ante-incorporation agreement, exhibit A, says nothing of any intention to form a partnership. On the contrary its preliminary recitals afford every indication that the sole purpose of the parties was to promote and organize a corporation. The words used are: "Whereas the parties desire to provide a general plan and scheme of organization of said corporation and business." In determining whether a partnership is created, the entire set of agreements between the parties must be considered, together with all of the attending circumstances: Rowley v. Rowley, 294 Pa. 535, 144 A. 537; Coens v. Marousis, 275 Pa. 478, 119 A. 549. The primary essentials of a partnership are defined in the Uniform Partnership Act of March 26, 1915, P. L. 18, part II, section 6 (53 Purdon's Statutes, section 11), as "an association of two or more persons to carry on as coöwners a business for profit." The indispensable requisites of a partnership are coöwnership of a business and the sharing of its profits. In the case before us, when incorporation was achieved the business was carried on by the corporation

itself. No such business was previously carried on by the four stockholders acting as individuals or as partners. The four incorporators were not partners unless all coöwners of stock in any corporation are partners. They did not own any business together. The business was owned by another legal entity, to wit: the corporation. The fundamental requisite of a partnership is coöwnership of a business. "Business" is defined in the Partnership Act, part I, section 2, as including "every trade, occupation or profession." The fact that the defendant took five per cent of the profits as part of the compensation for his services affords no inference of a partnership: Uniform Partnership Act of 1915, P. L. 18, part II, section 7 (4-b), (59 Purdon's Statutes, section 12); Frazier v. Mansfield, 305 Pa. 359, 157 A. 798; Kaufmann v. Kaufmann, 222 Pa. 58, 70 A. 956.

Appellant quotes expressions of this court in Christian's App., 102 Pa. 184; Stone v. Schiller B. & L. Assn., 302 Pa. 544, 153 A. 758; and Brown v. Victor Building Association, 302 Pa. 254, 153 A. 349, where reference is made to building and loan associations as partaking of the nature of both corporations and partnerships. It should be noted that building and loan associations are particular creatures of express statutes. As Judge END-LICH said in his opinion affirmed in Folk v. State Capital Savings Association, 214 Pa. 529, 532, 63 A. 1013: "It is, indeed, to be noted that the legislature has attempted no definition of what constitutes a building association. It is assumed that certain features and methods are essential to it, and there is no room for doubt that without them no corporation, whatever its label, can claim to be a building association." See Sundheim, Law of Building and Loan Associations (1922 edition), sections 1, 3, 4 and 7.

Appellant also cites the case of Cuppy v. Ward, 30 Pa. Dist. Rep. 394. The facts in that case differ from the facts in the case now before us. The distinguishing feature in that case was the stipulation that defendant

should transfer to plaintiff a controlling stock interest in the corporation which the two parties agreed to purchase. This in itself constituted a matter cognizable in equity, in a suit for specific performance: Fitzsimmons v. Lindsay, 205 Pa. 79, 54 A. 488; Lindsay's Est., 210 Pa. 224, 59 A. 1074; Sherman v. Herr, 220 Pa. 420, 69 A. 899. The preliminary agreement here entered into was manifestly an agreement to incorporate, and not as in Cuppy v. Ward, to purchase the stock of an existing corporation. The division of managerial authority in the case now before us, whereby plaintiff is to manage the manufacturing branch of the business, does not negative control of the entire corporate business by the board of directors. Plaintiff would have us strip the defendant corporation of its corporate habiliments and make it stand unmasked as a partnership. This will not be done except under such unusual circumstances as are not present in this case. See Macan v. Scandinavia Belting Co., 264 Pa. 384, 107 A. 750, and Goetz's Est. (No. 1), 236 Pa. 630, 85 A. 65; Majestic Company v. Orpheum Circuit, 21 F. (2d) 720, where numerous authorities are assembled. Cuppy v. Ward, supra, was decided principally on the authority of certain New York cases which appear to be modified in subsequent cases: Boag v. Thompson, 208 App. Div. (N. Y.) 132, 203 N. Y. Supp. 921, and Berger v. Eichler, 211 App. Div. (N. Y.) 479, 207 N. Y. Supp. 147. See also Brock v. Poor, 216 N. Y. 387. The plaintiff in Cuppy v. Ward, supra, was denied relief in New York prior to his application to the courts of this Commonwealth: Cuppy v. Ward, 187 App. Div. (N. Y.) 625, 176 N. Y. Supp. 233 (affirmed by the Court of Appeals, 227 N. Y. 603, 125 N. E. 915). This case is an authority against the present suit. So also are the cases of Jackson v. Hooper, 76 N. J. Eq. 592, 75 Atl. 568, and Seitz v. Michel, 148 Minn. 80, 181 N. W. 102, where it is said to be contrary to sound policy to permit "persons engaged in business as partners to incorporate with intent to obtain the advantages and im-

munities of a corporate form, and then, Proteus-like, become at will a copartnership, or a corporation, as the exigencies or purposes of their joint enterprise may from time to time require." In Jackson v. Hooper, supra, plaintiff and defendant acquired the entire stock of the corporation as a partnership, each to have equal voice and control in the management of the corporation as directors, together with other directors who were to have only nominal functions. The parties quarreled and defendant with the aid of the "dummy" directors ousted plaintiff from participation in control of the business. Plaintiff brought a bill in equity for a receiver and an injunction. The fourteen judges of the Court of Errors and Appeals were unanimous in denying relief, saying that if the parties "adopt the corporate form, with the corporate shield extended over them to protect them against personal liability, they cease to be partners and have only the rights, duties and obligations of stockholders. They cannot be partners inter se and a corporation as to the rest of the world"; and that such a legal paradox offends sound principles of public policy. See also Einstein v. Rosenfeld, 38 N. J. Eq. 309; Russell v. M'Lellan, 14 Pick. (Mass.) 63; Pratt v. Bacon, 10 Pick. (Mass.) 123; Sun River Stock and Land Co. v. Montana Trust and Savings Bank, 81 Mont. 222, 262 P. 1039. This reasoning does not mean that a partnership may not organize corporations to handle a portion of its business and own all of the stock in them, as pointed out in the Montana Case, supra, and in Denny v. Guyton, 327 Mo. 1030, 40 S. W. (2d) 562, and as was apparently the case in Calkins v. Calkins, 63 Cal. App. 292, 218 P. 611. But even in such cases the admitted jurisdiction of equity in partnership proceedings would not necessarily include jurisdictional power over the corporate entity which the partners controlled, to plunge it into receivership and decree a dissolution.

In the case before us, we have a situation where the partners agreed among themselves to form a corporation

for the purposes of manufacture and trade, with specified division of stock control and contribution of capital. The sole business of these parties was that carried on by the corporation. We know of no principle of equity which will justify a minority stockholder, after the corporation had had many years' success, to enlist the aid of a court of equity to have a receiver appointed and the corporation dissolved. A receivership and dissolution of the corporation is a radical remedy to be invoked only in case of legal necessity. Here no question of insolvency is involved. Here the complaining party's interests are not imperiled by any alleged fraudulent manipulation of the assets (as in Schipper Bros. Coal Mining Co. v. Economy Domestic Coal Co., 277 Pa. 356, 121 A. 193) or internal dissension so violent as to render corporate action impotent (as in Hall v. City Park Brewing Co., 294 Pa. 127, 143 A. 582). See also Hlawati v. Maeder-Hlawati Co., 289 Pa. 233, 137 A. 235, and McDougall v. Huntingdon & Br. T. R. & C. Co., 294 Pa. 108, 143 A. 574. A court of equity cannot intermeddle with the internal management of a corporation, except under special circumstances: Whyte v. Faust, 281 Pa. 444, 127 A. 234; 14a C. J. page 950. In the case before us the complaint charges fraud and mismanagement. The allegations are not of that specific nature which would call for the interposition of a court of equity. The complaint sets forth that the individual defendants have "undermined the confidence of the employees in plaintiff's ability;" their "lack of tact" resulted in a strike which caused great loss and damage to the corporation. They "assumed to dominate" the corporation and "ignored" plaintiff. Other similar acts are recited, and these were characterized as being "unlawful, wrongful and fraudulent." This characterization is merely a conclusion from the facts cited, and it appears to be unjustified. The chancellor aptly said: "The bill does not definitely set forth and describe a single dishonest or fraudulent act. It does show, inferentially, that the

plaintiff and two defendants as directors and stockholders had dissensions among themselves as to certain policies and plans in the management of the business......and that in determining these dissensions the two Largmans, by reason of their holding a majority of the stock and being the majority of the directors, adopted their own views and plans and disregarded or overruled the views and contentions of the plaintiff." Negative averments of fraud are insufficient to invoke the equitable interposition demanded. See Rice v. Braden, 243 Pa. 141, 89 A. 877; Levine v. Pittsburgh State Bank, 281 Pa. 477, 127 A. 68; Kann v. Bennett, 234 Pa. 12, 82 A. 1111.

The quintessence of the complaint in this case is: first, that the board of directors are managing the affairs of the company in a manner that invites the disapproval of the plaintiff, who is a minority stockholder and who is outvoted on the directorate; and, second, that plaintiff was wrongfully discharged. Since the corporate management offends plaintiff's judgment and opinion rather than his legal and equitable rights, the offense is not one that moves a chancellor to raise an admonishing or helping hand. If plaintiff's contract of employment has been breached, law and not equity is the appropriate forum to repair for redress.

It is finally contended that the bill should not have been dismissed, but should have been retained with leave to amend. This contention is without merit for no request to this effect was made in the court below. See Oil City National Bank v. McCalmont, 303 Pa. 306, 154 A. 497; Com. v. Blume, 307 Pa. 406. Equally insupportable is the claim that the bill ought to have been certified to the law side of the court for further proceedings, as was done in Costley v. Smith, 278 Pa. 242, 122 A. 280. There the relief prayed for was cancellation of a deed and repayment of purchase money, a subject-matter clearly cognizable in a court of equity. The Act of June 7, 1907, P. L. 440, provides in section 2 that "if

a demurrer or answer be filed, averring that the suit should have been brought at law, that issue should be decided in limine......If the court shall decide that the suit should have been brought at law, it shall certify the cause to the law side of the court, at the costs of plaintiff." Section 3 provides that "if upon an appeal, after a decision upon the merits, the question whether the suit should have been brought at law is not specifically raised by the defendant's assignments of error, the question shall be deemed to have been waived, and the decree below shall not be reversed or set aside because the suit should have been brought at law. If it is so raised, and the decision of the appellate court is that the suit should have been brought at law, it shall remit the cause to the court below, with directions to transfer it to the law side of that court, all the costs in the cause to abide the final determination thereof in the court of law."

In the case now before us, neither the state of the record nor the subject-matter of the relief sought presents a situation for the application of the act quoted.

The decree is affirmed at the cost of appellant.