Love, Appellant, *v*. Love.

Argued April 25, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Stanley M. Greenberg,* with him *Bernard S. Ochman, Charles S. Schermer* and *Montgomery, McCracken, Walker & Rhoads,* for appellant.

*David Kanner,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, May 27, 1957:

Louis Love invented a cleaning compound to which he gave the lively name of "Zipp-O". On or about May 1, 1954, his brother, Samuel Love, recommended to him that they enter into a business arrangement, whereby Samuel Love would contribute the merchandising know-how, skill, and cash, and Louis would supply the formula and the name. It seems that while Zipp-O had merit as a detergent it needed exploitation. Samuel Love induced Louis to place a supply of Zipp-O for sale at a retail store on Market Street in Philadelphia, and he then proceeded to exercise his talents as a "spieler" in proclaiming the virtues of Zipp-O, urging the public, much in the nature of the old-time circus barker, to buy Zipp-O, the "secret formula, all-purpose cleaner Zipp-O". He conducted a demonstration campaign, employing girls to show how the product could and should be used, and purchased. The business blossomed and prospered. Zipp-O was now being sold at farmers' markets in New Jersey, in a McCrory store at Atlantic City, and at a second store on Market Street in Philadelphia.

In September, 1954, the brothers decided to incorporate under the name of Pitman Laboratory Sales, Inc., each brother receiving one-half of the outstanding capital stock. Until the corporation could set up facilities for manufacturing Zipp-O, it was agreed that Louis Love would continue producing it in his own establishment, the Pitman Laboratories. This arrangement seemed satisfactory for a while, but in a matter of months, differences of a rather serious character arose between the brothers. Although they bore the name of Love, it seemed that now not much of it was being lost between them. What had once been brotherly love became distrust, then acrimony, and then hostility, which finally broke out into an open rupture between the inventor and the merchant. By May, 1955, Louis was refusing to deliver Zipp-O to Samuel, and Samuel was manufacturing, under the name of the corporation, his own Zipp-O. On September 15, 1955, Louis obtained in the Court of Common Pleas No. 3, Philadelphia County, a preliminary injunction restraining Samuel and the corporation from manufacturing the said Zipp-O.

On November 10, 1955, Louis petitioned the Court of Common Pleas for a rule on his brother to show cause why he should not be held in contempt for violating the injunction. Louis charged that Samuel had formed a new corporation by the name of Florin Chemical Corporation which was now manufacturing and marketing a product known as "New Sup-R Zip," but which in verity was not new, it was not super, and it had no more zip than the original Zipp-O, and that, as a matter of fact, the New Sup-R Zip was simply the old, original Zipp-O, wearing a fancier title. It is not to be conjectured to what heights of invention the battling brothers might have soared in this war of titles, had it not been that counsel for the parties en-

tered into a stipulation, approved by the Court, which now had the entire dispute before it for adjudication. The stipulation provided that Sup-R Zip would be withdrawn from the market, any potential contempt of the preliminary injunction would be purged, and Louis Love would reserve the right to "assert any claim for damages in this matter."

The whole controversy came on for hearing on March 28, 1956 with additional testimony being taken also on April 19, 1956. On August 6, 1956, the Chancellor filed an adjudication and Decree Nisi. Samuel had charged in his answer to the plaintiff's complaint that Louis was selling Zipp-O to customers of his own, in violation of their agreement that he was to produce the article only for the Pitman Laboratories Sales, Inc. The Chancellor decreed that Louis was no longer to sell his product to anybody but the Pitman Laboratory Sales, Inc., and that he was to account to the corporation for all profits realized by him on sales of Zipp-O.

Louis Love filed exceptions to the adjudication and decree nisi which were considered by the court en banc and eventually dismissed. On November 26, 1956, the decree was made final, and the plaintiff appealed.

The plaintiff argues that the lower Court erred in finding that a partnership resulted from any agreement which he had entered into with his brother, primarily because there was no writing to attest a partnership. A partnership agreement does not need to appear in written form. Once two or more persons agree to pool their resources in a common enterprise with equal obligations and benefits, a partnership comes into being. We are satisfied that the Chancellor properly found from all the evidence that Louis and Samuel Love did form a partnership for the manufacture, promotion, and sale of Zipp-O. *Schuster v. Largman*, 308 Pa. 520; *Mattei v. Masci*, 351 Pa. 93; *Com-*

*stock v. Thompson,* 286 Pa. 457; *Zuback v. Bakmaz,* 346 Pa. 279.

We are also satisfied that the lower Court correctly concluded that, with the formation of the succeeding corporation, all assets of the joint enterprise were transferred to the corporation, in return for which Louis and Samuel each received one-half of the outstanding capital stock of the corporation. The lower Court found, and we affirm the finding, that the corporation has title to the name and the formula and that Louis Love cannot, therefore, carry on an independent business in manufacturing or selling Zipp-O.

The appellant complains that the lower Court erred in excluding from the hearing a so-called proposed retirement agreement with all correspondence pertinent thereto. In disposing of the appellant's contention, the lower Court said: "Neither the agreement nor the correspondence embodies anything in the nature of an admission against interest. They represent at most an abortive attempt to define the status of the parties after settlement of their differences, not a definition of their then relationship . . . (. . . It is apparent that the minds of the parties never met upon the proposals to the point of entering in a contract embodying them)."

We affirm this disposal of the plaintiff's exception, as we affirm all that is said in the opinion sur exceptions to adjudication.

The final decree is affirmed. Costs to be paid from assets of the corporation.