## Hendrickson v. Vandling

*Harvey Freedenberg*, for plaintiff.
*Jack M. Stover*, for defendants.

SHUGHART, *P.J.*, June 2, 1983—James C. Hendrickson, the owner of approximately 11 percent of the outstanding common stock of Specialty Bakers, Inc. (hereinafter Bakers), and 20 percent of the outstanding common stock of Specialty Ladyfingers, Inc. (hereinafter Ladyfingers), brought this suit in his individual capacity as a stockholder. Defendants are three stockholders who collectively own the majority of the stock in both corporations. Although not specifically denominated as such in plaintiff's complaint, we can reasonably infer that the three defendants constitute the controlling group in each corporation. The question presented is whether the allegations of the complaint are sufficient to state a cause of action.

In general, the complaint alleges fraud and mismanagement, the purpose of which was to depress the value of plaintiff's stock and to deprive him of corporate profits. The alleged breach of defendants' fiduciary duties commenced in 1980 at about the time plaintiff, then a vice president of Ladyfingers, and defendant Michael Vandling were negotiating the repurchase of plaintiff's stock by the corporation. No agreement was ever reached.

Plaintiff avers that defendants diverted corporate assets to other business enterprises and to family

members. In particular, he alleges that defendants established a distributing firm known as Specialty Distributors, Inc., for the sole purpose of diverting funds from Bakers and Ladyfingers. One such way defendants allegedly accomplished this was to allow Distributors to use the facilities of Bakers and Ladyfingers without demanding any compensation. The same gratuitous treatment was allegedly afforded Rotating Rug Rental, an unrelated business enterprise.

Corporate assets also were allegedly diverted to members of the Vandling family. Plaintiff alleges that rentals paid by Bakers and Ladyfingers to members of the Vandling family for warehouse and parking facilities were in excess of the fair market value. In addition, defendants supposedly lent money to Bakers and Ladyfingers at 13 percent interest and then later obtained interest-free loans from the two corporations. Plaintiff further alleges that $14,000 in accounts receivable was never collected from Glass's Bakery in Duncannon, which is owned by members of the Vandling family. Furthermore, family members allegedly received salaries from Bakers and Ladyfingers without providing any services in return. Finally, plaintiff alleges that corporate funds and assets were used to improve real estate owned by members of the Vandling family; to purchase automobiles for the personal use of members of the Vandling family; to provide legal and accounting services for them; to pay their telephone, travel, and entertainment expenses; and to pay for a private secretary for defendant Nissley Vandling. In short, the allegations reflect a total disregard of the corporate entity for the enrichment of the controlling group. Plaintiff contends that such conduct constitutes "a willful, malicious and wrongful breach of defendants' fiduciary duties to plaintiff, as

a minority shareholder." Plaintiff's complaint paragraph 15.

Defendants do not dispute the existence of a fiduciary duty running to minority stockholders. They do not argue that the conduct as alleged would be insufficient to give rise to a cause of action. They do contend, however, that no cause of action is recognized that would give plaintiff the right to sue in his own behalf. Plaintiff, they argue, has failed to allege any direct injury to himself apart from injury to the corporation and has failed to allege any breach of duty owing primarily to himself.

The general rule for determining whether alleged misconduct supports an individual cause of action or a stockholders' derivative suit is stated as follows:

"If the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly, it is an individual action. On the other hand, if the wrong is primarily against the corporation, the redress for it must be sought by the corporation, except where a derivative action by a stockholder is allowable, and a stockholder cannot sue as an individual. The action is derivative, i.e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets." 13 W. Fletcher, Cyclopedia of Corporations §5911, at 309 (1980). (Footnotes omitted). In other words, "[i]n determining whether an action sets forth a derivative or a direct claim, we must determine whether the corporation or the stockholder was the directly injured party." In re

Penn Central Securities Litigation, 347 F. Supp. 1324, 1327 (E.D., Pa. 1972). See also Kelly v. Thomas, 234 Pa. 419, 83 Atl. 307 (1912); Levy v. Affiliated Fund, Inc., 17 D.&C.3d 418 (1980).

The corporation is considered the "directly injured party" when, as alleged here, a director or controlling stockholder mismanages or misappropriates corporate property. See Knapp v. Bankers Securities Corp., 230 F.2d 717, 720 (3d Cir. 1956) (diversity suit applying Pennsylvania law); Clinton Hudson & Sons v. Lehigh Valley Cooperative Farms, Inc., 73 F.R.D. 420, 427 n. 13 (E.D., Pa. 1977), aff'd mem., 586 F.2d 834 (3d Cir. 1978); Selheimer v. Manganese Corporation of America, 423 Pa. 563, 224 A.2d 634 (1966). Suits to enjoin mismanagement and misappropriation or to recover damages for losses sustained therefrom can be brought by the corporation or by stockholders in a derivative action, but an individual stockholder cannot maintain an independent suit for the indirect injury sustained by him, even though his injury is an unavoidable and predictable result of the injury to the corporation. Kelly v. Thomas, supra. This is true even though the indirect harm suffered by the stockholder is the diminution in value of his corporate stock resulting from the depletion or waste of corporate assets. Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 732 (3d Cir. 1970), cert. denied, 401 U.S. 974 (1971). The result is no different where defendants specifically intend to depress the value of the stock of minority stockholders; a stockholder still has no standing to maintain a direct suit. 13 W. Fletcher, Cyclopedia of Corporations §§5841, 5913 (1980). Under these circumstances the corporation, not the stockholder, is the directly injured party. The individual stockholder's loss is merely a consequence of the damage inflicted upon the corpora-

tion. Although defendants' purpose in the instant case may have been to injure plaintiff, a minority stockholder, the means by which they allegedly attained their goal was to inflict damage on the two corporations. Plaintiff's loss was predictable and inevitable, but it also was indirect and therefore insufficient to sustain a direct action by plaintiff as an individual stockholder. Cf. Selheimer v. Manganese Corporation of America, 423 Pa. 563, 224 A.2d 634 (1966), and Burdon v. Erskine, 264 Pa. Super. 584, 401 A.2d 369 (1979), with Knapp v. Bankers Securities Corp., 230 F.2d 717 (3d Cir. 1956), and Porter v. Healy, 244 Pa. 427, 91 Atl. 428 (1914).

The denial of standing to individual stockholders who sustain an indirect injury resulting from the corporation's direct injury is consistent with the principle that a corporation is a separate legal entity distinct from its members. Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 733 (3d Cir. 1970), cert. denied, 401 U.S. 974 (1971). The corporate entity "[was] designed for the protection of the entire community of interests in the corporation, including creditors as well as stockholders," 13 W. Fletcher, Cyclopedia of Corporations §5811 (1980), and there is no compelling reason why enforcement of the fiduciary obligations owed to the corporation and its minority stockholders should be enforced other than by the corporation or through a stockholder's derivative suit. Id. A contrary holding would result in an innumerable number of suits. Beeber v. Wilson, 285 Pa. 312, 131 Atl. 854 (1926). This would be burdensome to our judicial system and unfair to defendants, who would be forced to defend this multiplicity of suits. There is simply no authority in Pennsylvania for such a result. Several cases from other jurisdictions are cited by plaintiff in support of his

position; however, for the reasons set forth below, we do not find his arguments persuasive.

The primary case advanced in support of plaintiff's position is Willis v. Dillsburg Grain & Milling Co., 490 F. Supp. 46 (M.D., Pa. 1980). In Willis the minority stockholder of a corporation brought a direct action against the corporation and the majority stockholder to compel payment of a dividend. Plaintiff alleged that the majority stockholder had "taken on a course of conduct to 'squeeze out' plaintiff from all participation in the defendant corporation." Id. at 50. The primary means defendant used to accomplish the alleged squeeze out was his refusal to vote for the declaration of a dividend, a refusal based not upon business reasons but rather upon a desire to cause plaintiff, the only other stockholder, financial hardship. Relying on Knapp v. Bankers Securities Corp., 230 F.2d 717 (3d Cir. 1956), the district judge denied summary judgment on the two counts dealing with defendant's refusal to vote for a dividend and squeeze plaintiff out of the corporation.

Knapp supports the position that a stockholder's action against a corporation and its directors to compel the declaration of dividends is enforceable as a stockholder's individual right in a direct action. This is consistent with the court's analysis in In re Penn Central Securities Litigation, 347 F. Supp. 1324 (E.D., Pa. 1972), which distinguishes direct and derivative actions by identifying the directly injured party. Counts I and II of the complaint in Willis alleged injury to the stockholder only. There were no allegations of injury to the corporation. Plaintiff complained that he was being denied a fair return on his investment, but unlike our case, he did not allege that the majority stockholder was injuring him by injuring the corporation. To the contrary, defendant corporation in Willis was apparently in

good financial shape. The mere fact that plaintiff in Willis characterized this attempted squeeze out as a breach of defendant's fiduciary duty is not determinative. The central inquiry is still whether the stockholder or the corporation is the directly injured party. Clearly plaintiff and not the corporation was the directly injured party in Willis; indeed, he was the only injured party. Thus, we fail to see how Willis supports plaintiff's position in the case at bar, where it was the corporation that allegedly sustained the primary loss.

Finally, plaintiff cites two cases from sister states that uphold a minority stockholder's right to maintain an individual action against the majority or controlling stockholders for injury suffered as a result of breach of their fiduciary duty owing to the minority: Masinter v. WEBCO Co., 262 S.E. 2d 433 (W. Va. 1980); and Wilkes v. Springside Nursing Home, Inc., 370 Mass. 842, 353 N.E.2d 657 (1976). Both cases involve the attempted freeze or squeeze out of a minority stockholder of a close corporation by depriving him without any legitimate business purpose, of any benefit from his ownership and investment in a corporation. Neither case is dispositive here.

The question before the court in Masinter was whether a cause of action exists for oppressive conduct by majority stockholders of a close corporation; or, in other words, whether a minority stockholder can maintain a direct action for a breach of the majority stockholders' fiduciary duty to the minority. Plaintiff was one of only three stockholders, who all had an equal interest in the corporation. To freeze out plaintiff the other two stockholders voted to terminate his employment and exclude him from direct participation in the corporate business. This action effectively denied plaintiff a return on his

investment since no dividends were paid by the corporation. To further freeze out plaintiff, defendant corporation opened a retail outlet in the same town plaintiff operated a retail business. The alleged purpose of defendant's action was to injure plaintiff's business. In the court's opinion these allegations were sufficient to state a cause of action against the majority stockholders which could be pursued by the minority stockholder in his own right.

The circumstances were similar in Wilkes. Again, the controversy concerned the oppressive conduct of majority stockholders of a close corporation. The freeze-out tactics included termination of plaintiff's employment as a director and officer, and of course, his salary. The court upheld plaintiff's right to sue in a direct action for breach of the majority stockholders' fiduciary duty to him as a minority stockholder.

. These cases stand in sharp contrast to the established line of cases throughout this country that have denied relief in such situations, See, e.g., Schuster v. Largman, 308 Pa. 520, 162 Atl. 305 (1932). Traditionally, investors who elected the corporate route were bound by corporate formalities and were denied relief afforded aggrieved members of a partnership. In short, they had to take the bad with the good. Oppressed stockholders were generally without relief. See generally Comment, The Close Corporation Comes of Age in Pennsylvania; Article III, Chapter B of the Business Corporation Law, 73 Dick. L. Rev. 272 (1969).

Recently, however, courts have been more receptive to complaints by oppressed minority stockholders of close corporations. Masinter and Wilkes are reflective of this trend. Courts and legislatures have recognized "that traditional principles of corporate law, such as the business judgment

rule, have failed to curb the abuse of corporate power within close corporations." 13 W. Fletcher, Cyclopedia of Corporations, §5820.1, at 13 (Cum. Supp. 1982). "The need for relief has been said to be the lack of a readily available market for close corporation stock, which precludes minority stockholders from the traditional remedy available to oppressed stockholders of large corporations, that of selling their stock." Id. at 12. (Footnote omitted). Consequently, the heretofore vital distinction between partnership law and the law applicable to business corporations is generally found to be unimportant when dealing with oppressive conduct on the part of majority stockholders of close corporations. See, e.g., Wilkes v. Springside Nursing Home, 353 N.E. 2d 657 at 661, 370 Mass. at 842.

Unfortunately for plaintiff, we are not persuaded that he is within the umbrella of protection afforded by these developing legal theories. The distinctions between the factual allegations in his complaint and those in cases such as Masinter and Wilkes are significant. First of all, from plaintiff's complaint we are unable to conclude that Bakers and Ladyfingers are close corporations, as both corporations were in the cases cited by plaintiff. A close corporation has been defined as a "business enterprise which, though in corporate form, is operated as a partnership with only a few shareholders." Comment, The Close Corporation Comes of Age in Pennsylvania, supra, at 272. In Pennsylvania, as in many states, the decision whether to characterize a business corporation as a close corporation has been made easier by the legislature. The requirements for formation of a close corporation and transformation of an existing business corporation into a close corporation are expressly set forth in our Business Corporation Law of May 5, 1933, P.L. 364, Art. I, as amended by

the Act of July 20, 1968, P.L. 459, §18, 15 P.S. §§1373, 1374. See generally W. Zeiter. A Comparison of the Pennsylvania Business Corporation Law and the New Delaware Corporation Law in Light of the 1968 Revision of the Pennsylvania Law, 74 Dick. L. Rev. 1 (1969); Comment, The Close Corporation Comes of Age in Pennsylvania, supra. There are simply insufficient allegations in plaintiff's complaint from which we could infer that plaintiff is proceeding as a minority stockholder of such a corporation.

Even if Baker and Ladyfingers were close corporations, plaintiff's complaint would still be insufficient to support a direct action. As defendants correctly point out in their brief, "[plaintiff] alleges only two actual injuries in his complaint. He alleges that the Vandlings have sought to diminish the value of his corporate shares and to divert funds from the Ladyfingers' profit sharing plan. Both alleged injuries . . . constitute indirect harms to [plaintiff] resulting from a direct impairment of corporate assets." Thus, the vital distinction between this case and those cases affording relief to oppressed minority stockholders: In this case the alleged freeze out was attempted by inflicting injury upon the corporation; in the oppressed minority stockholders cases, such as Masinter and Wilkes, the injury was inflicted directly upon the stockholder, the corporation being unharmed.

Contrary to the cases dealing with oppressed minority stockholders, the relief available in a stockholders' derivative action is adequate here. Accordingly since there is no legal justification for individual suits by each minority stockholder, plaintiff's attempt to maintain a direct action on his own behalf must fail.

## ORDER OF COURT

And now, June 2, 1983, for the reasons appearing in an opinion filed this date, defendants' preliminary objection in the nature of a demurrer is sustained. Plaintiff is given 20 days to file an amended complaint.