## Provident Trust Company of Philadelphia, Exr., *v.* Rankin et al. (Schwacke, Appellant).

Argued January 3, 1939.  Before KEPHART, C. J., SCHAFFER, LINN, STERN and BARNES, JJ.

414

*Alfred J. Snyder,* for appellant.

Opinion by Mr. Justice Schaffer, March 22, 1939:

The administratrix of John Strubing Schwacke's estate appeals from the decree of the court below directing her to account to the Provident Trust Company, executor of the estate of Thomas M. Kellogg, on the basis that her decedent was a partner of the dissolved firm of Rankin & Kellogg.

In articles of agreement entered into by John H. Rankin, Thomas M. Kellogg and John Strubing Schwacke, it is stated that the three persons named "have agreed to become copartners for the purpose of succeeding to the practice and business of the firm of Rankin, Kellogg and Crane, architects, . . . under the firm name and style of Rankin and Kellogg" and to continue as such until written notice is given by any one of the partners to the other two of his desire to terminate the relationship, or until otherwise terminated as provided in the agreement. Rankin and Kellogg were designated as "senior partners" and Schwacke as "junior partner." It was agreed that all rents and other expenses, that may be required for the support and maintenance of the business and the practice of the profession, were to be paid and discharged by the firm, and all gains, profits and increases not required for the prosecution and maintenance or extension thereof or for maintaining and increasing a reserve fund, should be distributed among the partners, in the proportion of 42½% to each of the senior partners and 15% to the junior, and that all losses which might happen to their joint business should be borne and paid for, first, out of surplus

or earnings, if any, and thereafter, out of the reserve fund, as it may exist at the time, "and upon the exhaustion thereof among the parties in the aforesaid proportions." It was further agreed that there should be rendered, at intervals, an account of profits made and of losses sustained. Each of the partners was to receive from the business, on account of his services, an annual salary of $6,000 if the earnings were sufficient, and, if not, such an amount as the business was able to pay.

The contract set forth that the senior partners, in consideration of the covenants of the junior partner, would assign and transfer to the copartnership all their right, title and interest in the assets, business and property of the partnership of Rankin, Kellogg & Crane, with certain exceptions, but that such assets and property were to remain vested in and continue as the sole property of the senior partners. It was provided that a reserve fund should be established by the transfer into it of certain stocks and bonds belonging to the senior partners, and that this reserve fund should be continued and maintained by the contribution thereto of $6,000 per annum from the earnings of the firm. The general policy and management of the firm's business was to be determined by the senior partners, who it was stated would consult from time to time with the junior partner relative thereto. The junior partner was to contribute his services only, and no assets or property. He was only to be entitled to receive his salary, and the share of the net earnings heretofore mentioned and was to have no interest or share whatsoever in the assets, property and reserve fund, all of which were to be vested in and remain the property of the senior partners. As to the division of profits, it was provided that only such part, and so much of the net earnings and profits should be distributed to the copartners as the senior partners should from time to time order to be disbursed. Upon dissolution of the copartnership, each partner was to receive his full share of the net earnings or profits remaining undistributed,

and at the time of termination "the said copartners each to the other shall and will make a true, just and final account of all things relating to their said business and profession and in all things truly adjust the same."

It is contended by appellant that the court below was in error in determining that the agreement constituted her decedent a partner as between the parties to the agreement. We recognize, of course, that under certain conditions parties to an agreement as between themselves may not be partners, while as to third persons they may be, but under the terms of this contract, it is difficult to see why it did not constitute the three persons concerned partners generally. It is argued that as to appellant's decedent, they were not, because there was no coöwnership of the specific property used in the business. In *Schuster v. Largman,* 308 Pa. 520, 528, 162 A. 305, we pointed out that, "The indispensable requisites of a partnership are coöwnership of a business and the sharing of its profits. . . . The fundamental requisite of a partnership is coöwnership of a business." Under the language of the agreement before us, there can be no question that there was coöwnership of the business; the fact that the junior partner had no ownership of the property which was put into the business by the two senior members can make no difference, nor can it make any difference that in distribution of the assets and the reserve fund he was to have no share: *Thurston v. Detroit Asphalt, etc., Co.,* 226 Mich. 505, 198 N. W. 345.

It is asserted that Schwacke had no right to share in the profits. This is based upon the provision of the agreement that only such part and so much of the net profits were to be distributed as the senior partners might from time to time order. In any event, this would have been the result, because the two senior partners were a majority of the membership. However, upon dissolution, the junior partner had the right to his share. We think the agreement, as worded, cannot be construed to make Schwacke only a profit sharing employee, as ap-

pellant argues. The Uniform Partnership Act of March 26, 1915, P. L. 18, Sec. 7, 59 PS Sec. 12, declares: "The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner of the business." It is contended that the junior partner had no right of management or control under the agreement, which provides that the general policy and management of the firm's business was to be determined by the senior partners, but, it also provides that they would consult from time to time with him, therefore, he did have a voice in management.

Irrespective of whether Schwacke was a partner or not, under the terms of the agreement he became liable for the losses of the firm in the same proportion as he was entitled to profits. The fourth paragraph imposes on each of the partners the same proportionate liability for losses as they were entitled to receive of the profits. This paragraph reads: "It is mutually agreed by and between the parties hereto . . . that all loss that shall happen to their said joint business and profession . . . shall be borne and paid for out of surplus or earnings, if any, and thereafter out of said reserve fund as it may exist at the time of such loss or losses, *and upon the exhaustion thereof among the parties hereto in the aforesaid proportions.*" As before stated, the agreement contains the following provision: "And at the time of the termination of this copartnership, the said copartners each to the other shall and will make a true, just and final account of all things relating to their said business and profession and in all things truly adjust the same." Even if Schwacke were not a partner, his administratrix would be under a duty to account and his estate to bear its proportionate share of the losses of the firm because of this express provision of the agreement.

Complaint is made by appellant that the chancellor erred in limiting the case to a consideration of the written agreement, without affording her an opportunity to present evidence of the attending circumstances and ac-

tions of the parties, which it is said would have shown that they interpreted the agreement as not constituting her decedent a partner. We think this position cannot be maintained, as it is evident from the record before us that the court was ready to afford appellant full opportunity to present anything she desired to offer.

It should be borne in mind that the proceeding is now in a preliminary stage, since no account has yet been filed, either by appellant or by Rankin, the surviving partner, who admits his liability to account. It is only after an account has been stated and adjudicated that the respective liabilities of the parties and their estates can be determined. All that we now decide is that, under the agreement, appellant is required to account. The extent of the accounting, and the respective rights of the parties, must await determination until the account has been filed and adjudicated: *Davidson v. Davidson*, 262 Pa. 520, 106 A. 64; *Rowley v. Rowley*, 289 Pa. 171, 137 A. 226; *Sellers v. Hanratty*, 332 Pa. 185, 2 A. (2d) 735.

Decree affirmed at appellant's cost.