Right Lumber Co., Inc., Appellant, *v.* Kretchmar.

Argued December 13, 1962.   Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD JJ.

*James F. Monteith,* with him *C. Gilpin Gibbon,* and *Witney, Thornton and Gibbon,* for appellant.

*Martin Greitzer,* with him *Takiff and Bolger,* for appellees.

OPINION BY FLOOD, J., March 19, 1963:

The Right Lumber Co., Inc., the appellant, having obtained judgment against Henry Kretchmar, the defendant, issued an attachment execution, serving Flower Construction Company, Inc. and Bayard Corporation as garnishees. To the interrogatories filed by the plaintiff, the garnishees' answers admitted that they were indebted to Kretchmar in the sum of $47,-632.50, the amount of a judgment obtained by him against them but averred by way of new matter that this judgment was for wages and salary and exempt or immune from attachment. The garnishees attached to their answers a copy of Kretchmar's complaint in the suit in which he obtained judgment against them. From this it appeared that the judgment represented part of the compensation due him for his services as general superintendent of a building operation under an oral contract under which he was to receive $150 per week and 25% of the gross profits. The weekly sums had been paid when due and the suit was brought for 25% of the gross profits, and the judgment represented the amount alleged to be due under this provision of the contract.

The court below sustained the garnishees' contention that the amount of the judgment represented wages or salary. Such a judgment is exempt from execution under the Act of April 15, 1845, P. L. 459, §5, 42 PS §886. *Steel v. McKerrihan,* 172 Pa. 280, 33 A. 570 (1896) ; *Malloy v. McCollum,* 18 Dist. 672, 36 Pa. C.C. 226 (1909).

The appellant contends that "25% of the gross profits" cannot be considered as wages or salary under the act. It argues that the judgment represents an amount due as profit on a partnership arrangement between Kretchmar and the garnishees, rather than wages or salary.

There is no allegation of partnership in Kretchmar's complaint against the garnishees, and there is no indication in the testimony that he was a co-owner of the business of the garnishees. Nothing short of this will make him a partner. "A partnership is an association of two or more persons to carry on as co-owners a business for profit". Uniform Partnership Act of March 26, 1915, P. L. 18, §6(1), 59 PS §11(1). The act further provides in §7(4) (59 PS §12(4)): "The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment . . . (b) As wages of an employe". The contention, in the total absence of other evidence, that Kretchmar was a partner because he received a share of profits for his services and that therefore the share of profits cannot be considered as wages or salary because he is a partner, is in the teeth of the language of the act. *Tax Review Board v. Green,* 409 Pa. 448, at page 452, 187 A. 2d 572, at page 574 (1963). The plaintiff's case falls because there is nothing anywhere else in the pleadings or evidence to contradict the averment in Kretchmar's complaint that the share of profits was "to be paid for his services in acting as the general superintendent of Defendants' building activities". To the contrary uncontradicted testimony indicated that Kretchmar had no financial interest in either of the corporations, that he had no authority except that which was given to him by Mr. Fineman, the president of the garnishee companies, and that the records of the garnishee, Flower

Construction Company, Inc., showed that Kretchmar was carried on the books at all times as an employe with the usual deductions for federal income tax, social security contributions and the city wage tax.

A share of gross profits is not the same thing as a share of the net profits. It is the latter which co-owners receive by reason of their ownership of the business. The meaning of "gross profits" may vary depending upon whether it is used by an economist or a businessman and may be used to mean different things in the accounting systems of different businesses. But in all cases it means something other than, and in contrast to, the net profits which the owners divide among themselves or which increase the net worth of the business. As the Supreme Court said in *Wells Whip Co. v. Mut. Fire Ins. Co.,* 209 Pa. 488, at page 495, 58 A. 894, 896 (1904) : "In such valuation however was included what is designated 'gross profits', gross profits being the difference between the sum named and certain costs and expenses of production, the actual net profits being such profits as finally remain after deducting all costs and incidental charges and expenses of every kind and description . . ."

While there was an indication in the testimony of the garnishees' counsel that their arrangement with Kretchmar called for 25% of the net, rather than gross profit, his testimony on this point was not clear. Moreover, even if his testimony is admissible to contradict the averments of Kretchmar's complaint which the garnishees have not denied, neither the defendant, Kretchmar, nor the garnishees, are bound by the testimony of counsel in view of its flat contradiction by the complaint upon which the judgment was entered. *Green v. Prise,* 404 Pa. 71, page 80, 170 A. 2d 318, 323 (1961). The trier of fact need not believe this testimony. *Weidemoyer v. Swartz,* 407 Pa. 282, 180 A. 2d 19 (1962). At most this was a contradiction for the

trial judge to resolve and, as appears from the opinion which he wrote for the court en banc, he found that the contract called for 25% of the gross profits.

Counsel for the garnishees testified that an arrangement to pay the general superintendent in building operations a share of the profits was a common practice in the interest of insuring maximum fidelity and minimizing temptations with respect to the suppliers of material and the exposure to kick-backs and private deals. This testimony again indicates that the payment was compensation for services. It was quite different from the situation in *Knerr v. Hoffman*, 65 Pa. 126 (1870), relied upon by the appellant, in which it appeared that the defendant had agreed with the garnishee to superintend the raising of ore for "half the profits and two dollars a day". In that case the court held that the jury could have found that the amount attached represented the balance of a partnership settlement and not wages, and sustained a verdict for the plaintiff. There was no such finding here.

The appellant also relies upon the statement in the opinion of the Supreme Court in *Smith v. Brooke*, 49 Pa. 147 (1865), that profit on wages of others is not exempt from attachment. In that case the defendant was a master carpenter who had been employed by the garnishee to build a house and the so-called "profit" appeared to be compensation for supervision by him of his hands at so much per hand for each day. The court based its decision upon the rule that the exemption applies only to "the earnings of the labourer, by his own manual toil, and not the profits which the contractor derives from the labour of others". This case is quite different from that before us. Kretchmar can in no sense be considered as a contractor for the labor of others. Moreover, insofar as *Smith v. Brooke,* supra, may seem to deny exemption to the compensation of one employed to superintend the work of others it has long since been superseded. *H. F. Watson Co., Inc. v.*

*Christ,* 62 Pa. Superior Ct. 604 (1916). In that case a portion of the defendant's work was to supervise other workmen in the erection of a coal breaker and his compensation included 10% of the amount of the payroll of all employes engaged in the construction of the breaker. The court held that this 10% of the payroll was immune from attachment since, although it was measured by the wages of other employes, it constituted money due the defendant for his own services, not profit on the labor of others. The same is true here.

The appellant further argues that the amount of the judgment cannot be considered as wages, based upon 25% of the profits, because the garnishees' counsel testified that there were no profits, but a substantial loss, on the operation, and that since the garnishees have admitted that the wage claim was spurious the judgment should not be exempt from attachment.

This attack on the very judgment upon which it is trying to recover cannot help the appellant. It amounts to saying that nothing is due on the judgment. If this is so, plaintiff gets nothing by its attachment. Moreover, the garnishees have admitted the indebtedness in their interrogatories and the fact-finder need not accept the testimony of their counsel as against this admission. Especially is this so when this testimony that there were no profits on the operation obviously refers to net profits, not gross profits, as to which we have no evidence. In short, the appellant seeks to have the court sustain the judgment and at the same time sustain its collateral attack upon the basis that it was entered for a spurious claim. In this, it cannot succeed.

The conclusion of the court below that the attached judgment represents wages or salary exempt or immune from attachment is a proper one under the pleadings and the evidence.

Judgment affirmed.