512 A.2d 658

**JEFFERSON BANK, Appellant,**

v.

**Howard DAVIDSON and Gwendolyn A. McCurdy, Appellees.**

Superior Court of Pennsylvania.

Argued Feb. 12, 1986.

Filed June 27, 1986.

Reargument Denied Aug. 12, 1986.

Mitchell L. Paul, Philadelphia, for appellant.

Edward J. Hayes, Philadelphia, for appellees.

Before MONTEMURO, HOFFMAN and CERCONE, JJ.

MONTEMURO, Judge:

This is an appeal from an order dissolving a sheriff's sale of certain real property on the basis that no lien of judgment ever attached to the property against which the execution issued.

In December 1979, appellee Howard Davidson borrowed $20,000 from appellant bank, securing the loan with a 90 day demand note. In February, 1982, appellant entered judgment by confession on the note, and in August, 1983, initiated execution on the judgment, obtaining a writ of execution, and scheduling a sheriff's sale of real property.[1] However, the property had from its acquisition been titled in the name of Howard E. Davidson Associates, a general partnership. Not until April 1982, two (2) months after entry of judgment, was the property transferred to Davidson personally. In June 1982, the title passed again, this time to appellee McCurdy, who held title at the time execution was attempted, and on whose petition the sheriff's sale was stayed. The court found, *inter alia,* that the property was after-acquired, and that there was no valid lien against it since the judgment had not been revived or execution reissued once title had passed from the partnership. The stay was therefore entered, and this appeal followed.

Appellant has presented us with four issues, the first two challenging the legitimacy of the partnership, and the last two questioning whether the court correctly assigned to

---

[1]. We note that the property, two adjoining condominiums, were acquired in December, 1980, and August, 1981, respectively.

appellee McCurdy the status of a good faith purchaser for value.

The partnership issues are couched in terms of whether the court properly applied the legal standard [2] for determining the existence of a partnership, and then whether the evidence to be measured by the statutory test was sufficient. Appellant's thesis, around which these issues are constructed, is that the partnership was a fabrication designed to protect Davidson's property from creditors. The obvious corollary is that given the fictitious nature of the association, the property in fact belonged to Davidson alone when judgment was entered, and was therefore subject to attachment, obviating the necessity for any rejuvenative measures.

■ As is pointed out by both sides, It is entrenched in the law of the Commonwealth that the existence of a partnership depends upon the intentions of the parties as to being partners and that no formal or

2. **Uniform Partnership Act. 59 Pa. C.S. § 312.**
   **Rules for determining the existence of a partnership**
   In determining whether a partnership exists, these rules shall apply:
   (1) Except as provided by section 328 (relating to partner by estoppel), persons who are not partners as to each other are not partners as to third persons.
   (2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.
   (3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.
   (4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:
   (i) As a debt by installments or otherwise.
   (ii) As wages of an employee or rent to a landlord.
   (iii) As an annuity to a surviving spouse or representative of a deceased partner.
   (iv) As interest on a loan, though the amount of payment varies with the profits of the business.
   (v) As the consideration for the sale of the goodwill of a business or other property by installments or otherwise.

written agreement need be executed in order for a valid partnership to exist.

*Barbet v. Ostovar,* 273 Pa.Super. 256, 265, 417 A.2d 636, 641 (1979). A review of the deposition testimony of Kenneth Aaron, the other partner in Davidson Associates, is most revealing on this point. Aaron, a former law partner of Davidson, had been associated with Davidson previously in another business venture. He was asked by Davidson to participate in the purchase of the real estate involved here as a minute partner, holding .01% interest, solely in order to prevent Davidson's estranged wife from obtaining the property in a divorce contest. Aaron was to be shielded both from liability, and any potential profit which might accrue. The intent of both Aaron and Davidson was that the former should acquiesce in the initiation.and operation of an association formed as an accomodation to the latter's domestic difficulties. This is clearly insufficient to fulfill the statutory criteria. Further, while we agree with the trial court that the size of an owner's interest is not necessarily controlling, there is little which argues for the existence of a valid partnership, *e.g.,* no partnership agreement nor any other formal indicium of association has been advanced. In fact, the quantum of (other) evidence necessary to demonstrate "clear mutual assent" of the persons aligned as partners, *In re Jackson,* 28 B.R. 559 (1983), is conspicuous by its absence. As a result, the property cannot be considered after-acquired, and, as the lien attached, no revival of judgment or reissue of execution was necessary, since title did not pass.

■ Nevertheless, the bank's claim is overridden by McCurdy's. It is argued that never having pleaded *bona fide* purchaser status, she cannot assert it now, and that she is not, in any event *bona fide,* as she took with notice of appellant's claim.

The Fraudulent Conveyances Act, 39 Pa.C.S. § 359, reads in pertinent part as follows:

## § 359. Rights of creditors whose claims have matured

(1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser:

> (a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim; or

> (b) Disregard the conveyance, and attach or levy execution upon the property conveyed.

To establish *bona fides*, the statute clearly requires that there be a purchaser for fair consideration (and appellant has made no charge that the purchase price for the property was symptomatic of, *e.g.*, a straw transaction), who takes "without knowledge of the *fraud* at the time of the purchase." (Emphasis added). Appellant's agents attended settlement and made no mention of a fraudulent partnership. The counterfeit nature of the association does not, in fact, appear as a theory of action until one year after appellee's petition to stay the sheriff's sale, that is when appellant's Answer to the petition was filed. Contrary to appellant's assertion, therefore, appellee need not have advanced her status as a *bona fide* purchaser since she required no affirmative defense; the court's introduction of this theme into the proceedings was perfectly proper as appellant's Answer [3] to the petition which made it an issue required no response.

■ Appellant's final claim is that appellee was in fact not a *bona fide* purchaser as she (or her agent) had a duty to inquire further, knowing of the existence of a claim against Davidson. Again, appellant was present at the closing, presumably to distrain upon any available proceeds. If appellant had, at that point, a theory of sham partnership, it was under an obligation to inform the title company, appellee's agent—otherwise there would have been no source from which to garner such information even had the

---

**3.** We note that fraud is an affirmative defense to be raised in New Matter. Pa.R.C.P. 1030.

question been asked. Had a claim of invalidity been made against the partnership by its creditor, no title insurance would have been forthcoming.

Therefore, even though there was a fabrication, appellant apparently had no notion of its character at the time appellee purchased the property, in which case appellee was in no position to discover its existence. If appellant was in fact aware of the fraud at closing, it waited too long to reveal its knowledge, if it wished to impute the same information to appellee. Neither appellee nor her agents is responsible for securing appellant's interests. Appellant cannot now complain, having sat on its rights, that somebody else violated them.

Order affirmed.