**Joel S. ABEL,**

v.

**AMERICAN ART ANALOG, INC. and Michael D. Zellman and Philip Cohen.**

**Appeal of AMERICAN ART ANALOG, INC. and Philip Cohen.**

**No. 87–1366.**

United States Court of Appeals, Third Circuit.

Argued Dec. 2, 1987.

Decided Feb. 1, 1988.

Rehearing and Rehearing In Banc Denied Feb. 29, 1988.

Harold E. Kohn, Jeanne P. Wrobleski (argued), Kohn, Savett, Klein & Graf, P.C., Philadelphia, Pa., for appellants.

Harry Lore (argued), Robert F. Simone, Philadelphia, Pa., for appellee.

Before WEIS, HIGGINBOTHAM, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This diversity action raises interesting questions of partnership law growing out of an unusual business arrangement be-

tween the plaintiff-appellee, Joel S. Abel, and his co-partners, on the one hand, and the defendants-appellants, Philip Cohen and his wholly owned corporation, American Art Analog, Inc. (American), on the other. Abel brought suit against the defendants charging them with tortious interference with his partnership arrangements. After a trial to a jury in the United States District Court for the Eastern District of Pennsylvania, Abel obtained a judgment in the sum of $677,483 against both defendants. The district court denied defendants' motions for a directed verdict, for judgment notwithstanding the verdict (judgment NOV), for a new trial, and for dismissal for lack of federal jurisdiction. The defendants appeal and we reverse.

## I.

In December 1983, Michael Zellman, S. Robert Jacobs, and Joel Abel (the Partners or Group) entered into an oral partnership agreement to create and develop the *American Art Analog,* a three-volume reference book encompassing nineteenth and twentieth century American canvas art.[1] The Group agreed to divide any profits from the venture equally, with Zellman receiving an additional ten percent of any proceeds derived from the *Analog's* first five thousand sales. Moreover, each of the Partners undertook discrete responsibilities for the book's completion with Zellman serving as technical and research director, Jacobs as project director, and Abel as marketing director. At no time did the parties reduce the terms of their agreement to writing.

To attract outside investors, the partnership produced a ten page prototype of the *Analog* in September 1984. The prototype contained an explanation of the art valua-

tion techniques utilized in the *Analog,* biographical depictions of the represented artists, and color photographs of the relevant art works. Additionally, the partnership produced a "blue book," or prospectus, consisting of a budget for producing and marketing the *Analog,* and a five-year projection of revenues and profits.[2] Soon after the completion of the prototype and the blue book, the Partners had several disagreements culminating in a substantial modification of Jacobs' partnership role.

In September 1984, the three partners met with Philip Cohen at the Philadelphia offices of their mutual accounting firm, Laventhol and Horwath, to discuss Cohen's potential investment in the *Analog.*[3] As a consequence of that and subsequent meetings, Cohen formed American Art Analog, Inc., a company whose sole function was the production, sale, and distribution of the *Analog.* Cohen invested in excess of $900,000 in American and became the sole owner of its capital stock. Under the terms of their arrangement with Cohen, the Partners had no ownership position in American, but would receive thirty percent of the corporation's profits; Cohen would be entitled to the remaining seventy percent. The Partners were not, however, required to share in American's losses. Finally, as part of the agreement, Zellman and Abel were hired as salaried employees of American.[4] At no time were the terms of Cohen's agreement with the Partners reduced to writing.

In December 1984, Cohen directed Zellman to terminate Abel's salaried employment at American.[5] Cohen additionally induced Zellman to breach the oral agreement entitling Abel to his share of the thirty percent profit position.[6] In Febru-

1. Zellman testified that the word "analog," Abel's creation, "is an interrelation of subject matter.... So when we look at American art, we are looking at it pictorially, we are looking at it biographically and ... financially."

2. Zellman contributed approximately $15,000 to the project and Abel contributed approximately $8,000. Jacobs made no capital contribution.

3. Each of the partners testified that although Jacobs was relieved of all substantive duties in

the project, he nonetheless participated in the meeting with Cohen and remained a partner.

4. Abel was employed as American's Vice President and Marketing Director on October 1, 1984 at an annual salary of $45,000.

5. At the time of Abel's termination he had received $7,000 in salary from American.

6. Attempting to induce Zellman to extinguish Abel's entitlement to a profit share, Cohen stat-

ary 1986, Cohen's counsel informed Zellman that he too had been terminated. The *Analog* went on sale in March 1986.

Abel filed a complaint against Cohen, American, and Zellman on September 12, 1985.[7] On April 3, 1986, a jury found Cohen and American liable for wrongful interference with the Abel, Zellman, and Jacobs partnership agreement. In response to specific interrogatories, the jury found that: (1) in 1983, plaintiffs Abel, Zellman, and Jacobs entered into a partnership agreement to develop the project known as American Art Analog; (2) about December 1984, defendant Cohen directed that plaintiff Abel not participate in the American Art Analog project knowing that Abel and Zellman continued to be partners in the project; (3) before December 1984, the partnership of Abel, Zellman, and Jacobs entered into a partnership with Cohen to finance, publish, and market the *American Art Analog;* (4) under the terms of the "second partnership" agreement with Cohen, Abel and Zellman were to receive thirty percent and Cohen was to receive seventy percent of the profits. After a separate trial on damages, a jury awarded Abel $622,500 for pecuniary losses of benefits of contract rights resulting from wrongful interference, $6,500 for consequential losses for which wrongful interference was a substantial causal factor, and $48,483 for emotional distress. Judgment was entered for $677,483.

## II.

■ Initially, the defendants challenge the jurisdiction of the district court arguing that Abel's non-joinder of indispensable parties Zellman and Jacobs mandates dismissal pursuant to Fed.R.Civ.P. 19(b). Because Zellman and Jacobs are citizens of Pennsylvania, defendants observe that their joinder would defeat diversity.[8]

Fed.R.Civ.P. 19(a) denotes those parties whose joinder is necessary for a just adjudication of an action:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of his claimed interest....

Rule 19(a) guarantees that all parties interested in a particular lawsuit have both the chance to affect the outcome, and the benefit of finality as to the judgment rendered. *White Hall Building Corp. v. Profexray Division of Litton Industries, Inc.,* 387 F.Supp. 1202 (E.D.Pa.1974); *aff'd,* 578 F.2d 1377 (3d Cir.1978). If the requisites of Rule 19(a) are satisfied, a court must next determine whether "in equity and good conscience" the action should proceed without the absent party. *See Challenge Homes Inc. v. Greater Naples Care Center, Inc.,* 669 F.2d 667, 669 (11th Cir.1982). Rule 19(b) codifies the factors to be considered by a court contemplating dismissal:

[F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an

---

ed: "How would you like to make $1,000,000 and give him [Abel] 500,000, knowing that he can't work?"

**7.** Each of the partners have instituted pending actions in the Philadelphia County Court of Common Pleas.

**8.** Like Zellman and Jacobs, Cohen and American are Pennsylvania citizens. Zellman's and Jacobs' joinder as involuntary plaintiffs would therefore defeat diversity.

adequate remedy if the action is dismissed for nonjoinder.

Because we conclude that Zellman and Jacobs are not necessary parties pursuant to Rule 19(a), we need not determine whether the factors articulated in Rule 19(b) compel us to dismiss the action for lack of subject matter jurisdiction. Contrary to defendants' contentions, plaintiff is not asserting the interests of the partnership, but merely his personal entitlement to approximately one-third of the thirty percent profit position.[9] In other words, Abel's profit interest was readily severable from that of Zellman and Jacobs. A jury might therefore easily calculate Abel's rights and damages independently of the other members of the alleged partnership.[10] Turning to the factors enumerated in Rule 19(a), we observe that the severability of Abel's claim permitted the district court to accord complete relief to the parties before it. Similarly, we note that Zellman and Jacobs' absence did not subject the defendants to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. Once Abel's claim is decided, no further suits between the plaintiff and the defendants are possible. Concededly, Cohen might ultimately be found liable to Zellman and Jacobs for their respective profit shares, but any subsequent liability would be independent of that determined here. We therefore conclude that the district court did not abuse its discretion in refusing to dismiss the complaint for nonjoinder of indispensable parties.

### III.

We now consider the merits of the appeal. The defendants contend that the partnership among Zellman, Abel, and Ja-

cobs completed the objectives for which it was formed, and was therefore dissolved as a matter of Pennsylvania law.[11] Simply stated, Cohen and American assert that they cannot wrongfully interfere with a non-existent partnership. We agree.

Under Pennsylvania law, the existence of a partnership is a question of fact. *Silco Vending Company v. Quinn*, 315 Pa.Super. 367, 461 A.2d 1324, 1326 (1983). In determining whether the district court correctly denied defendants' motions for a directed verdict and for judgment NOV, we must examine the record and all inferences reasonably capable of being drawn therefrom in a light most favorable to the non-moving party. Denial of the motion for judgment NOV, as in the case of a denial of a motion for a directed verdict, must be affirmed unless "the record is critically deficient of that minimum quantum of evidence from which the jury might reasonably afford relief." *Denneny v. Siegel*, 407 F.2d 433, 439 (3d Cir.1969).

The Pennsylvania Uniform Partnership Act, 59 Pa.C.S.A. § 353(1)(i), provides that dissolution of a partnership is caused "[b]y the termination of the definite term or particular undertaking specified in the agreement." *See also Peardon v. Chapman*, 169 F.2d 909, 911 (3d Cir.1948) (completion of partnership business effects dissolution of partnership under New Jersey Uniform Partnership Act); *Union Bank v. Jones*, 138 Vt. 115, 411 A.2d 1338, 1344 (Vt.1980) (Under Vermont Partnership Act, the partnership had dissolved by completion of the undertaking for which it was formed).

■ There is no doubt that the initial agreement among Abel, Zellman, and Jacobs to develop the *Analog* constituted a partnership under Pennsylvania law. "A

---

**9.** Abel was actually entitled to less than a one-third share based upon the partners' agreement to give Zellman an additional ten percent for conceiving the *Analog* project.

**10.** Because Abel did not assert the interests of the partnership, we reject defendants' reliance upon precedents which assert that in actions involving partnerships, all of the partners are indispensable parties. *See Harrell & Sumner Contracting Company, Inc. v. Peabody Petersen Co.*, 546 F.2d 1227 (5th Cir.1977); *Gottlieb v.*

*Vaicek*, 69 F.R.D. 672 (N.D.Ill.1975), *aff'd*, 544 F.2d 523 (7th Cir.1976); *Hanna Mining Co. v. Minnesota Power and Light Co.*, 573 F.Supp. 1395 (D.Minn), *aff'd*, 739 F.2d 1368 (8th Cir. 1984).

**11.** The parties do not dispute the application of Pennsylvania law to the litigation and the district court implicitly concluded that Pennsylvania law applied. We agree and apply Pennsylvania law.

partnership is an association of two or more persons to carry on as co-owners a business for profit." 59 Pa.C.S.A. § 311(a). *See also Provident Trust Co. of Philadelphia v. Rankin*, 333 Pa. 412, 416, 5 A.2d 214, 215–16 (1939). A written agreement is not necessary to establish a partnership; its existence may be implied from a consideration of all the attending facts and circumstances. *Barbet v. Ostovar*, 273 Pa. Super. 256, 265, 417 A.2d 636, 641 (1979); *Gohen v. Gravelle*, 411 Pa. 520, 522, 192 A.2d 414, 416 (1963). From December 1983 through the formation of American in 1984, Zellman, Abel, and Jacobs were the sole owners of a business for profit. Their failure to enter into a written agreement was irrelevant to the formation of their partnership.

■ Our determination of whether Abel's partnership with Zellman and Jacobs fulfilled the purpose for which it was formed requires us to examine the legal impact of Cohen's agreement to finance the *Analog* project and employ Zellman and Abel as salaried employees of American. Because the terms of the partnership were never reduced to writing, our depiction of partnership purpose is based upon a review of the testimony produced at trial.

Zellman testified that the partnership had several purposes, including the formulation of the idea, the implementation of the idea in the bluebook, and the securing of financing, employment, and a profit position. Similarly, Jacobs and Abel testified that because the group could not produce and market the *Analog* with its own capital, the procurement of outside financing was among the partnership's most important objectives. Thus, Jacobs asserted that the bluebook was, in essence, a prospectus whose sole purpose was to attract outside investors.

On cross-examination at trial, Zellman unequivocally conceded that as a result of the Cohen agreement, the partnership achieved the objectives for which it was formed. The record fully supports Zellman's admission. The partnership successfully codified and implemented "the idea" for the *Analog* in the ten page prototype and in the blue book. Moreover, as a result of the Partners' agreement with Cohen and the subsequent creation of American, the Partners obtained full financing, employment, and a profit position. In rejecting defendants' motion for a directed verdict, the district court observed that among the partnership's objectives was the actual realization of the *Analog's* profits. The court's reasoning, however, ignores the effect of the Partners' agreement with Cohen. The Partners orally agreed that Cohen should have seventy percent of the profits in exchange for his promise to finance the *Analog* and give them the remaining thirty percent. Zellman himself testified that the agreement satisfied the partnership's objective of securing a profit position.[12]

■ Our conclusion that the partnership was dissolved by operation of law prior to defendants' alleged wrongful interference is also supported by the Partners' failure to obtain an ownership interest in American. As part of his agreement with the Partners, Cohen formed American, a corporation designed to own, produce, and market the *Analog*. Most importantly, Cohen was American's sole stockholder. Under Pennsylvania statutory law, it is well established that the indispensable requisite of a partnership is "to carry on as co-owners a business for profit." 59 Pa.C.S.A. § 311(a); *Provident Trust Co.*, 333 Pa. at 416, 5 A.2d at 216. The Supreme Court of Pennsylvania reiterated: "The indispensable requisites of a partnership are co-ownership of a business and the sharing of its profits." *Id.*

12. Zellman testified on cross-examination:
Q. And the object was to get financing for the project?
A. Yes.
Q. And so the partnership included ... the formulation of the idea, the implementation and construction of the blue book, and the securing of the financing and the securing of the employment positions, is that correct?

. . . . .

A. Yes. And I might add, arranging more than employment: A profit position.
Q. Which you did?
A. Which we did.

(quoting from *Schuster v. Largman*, 308 Pa. 520, 528, 162 A. 305, 307 (1932)).[13]

Therefore, because neither Abel, Zellman nor Jacobs, either as individuals or as a partnership, owned any portion of American, they no longer were partners at the time of defendants' alleged wrongful interference. Concededly, Abel did have a right to approximately one-third of the thirty percent profit position. However, mere entitlement to a profit share without more is insufficient to establish a partnership. 59 Pa.C.S.A. § 312; *Kirshon v. Friedman*, 349 Pa. 171, 178–79, 36 A.2d 647, 650 (1944); *Kingsley Clothing Mfg. Co. v. Jacobs*, 344 Pa. 551, 555, 26 A.2d 315, 317 (1942); *Right Lumber Co. Inc. v. Kretchmar*, 200 Pa.Super. 335, 338, 189 A.2d 302, 303 (1963). The Partners' failure to procure an ownership position in American therefore precluded their continuing status as a partnership.

Thus, we are constrained to conclude that the partnership formed between Abel, Zellman, and Jacobs completed the undertaking for which it was formed, and was therefore dissolved by operation of law upon the consummation of the profit-sharing arrangement with Cohen and American. In the alternative, we conclude that the partnership was terminated by its failure to retain ownership of the *Analog* or to procure an ownership position in American. Thus, the district court erred in failing to direct a verdict or judgment NOV in favor of the defendants for the reason that under Pennsylvania law there can be no wrongful interference with a non-existent partnership. Wrongful interference requires that a party intentionally effectuate a breach of contract between another and a third party. *See Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 482 Pa. 416, 430–32, 393 A.2d 1175, 1181–83 (1978). Because there was no existing partnership between Abel, Zellman and Jacobs after the formation of American, the defendants cannot be liable for wrongful interference as a matter of law.

We recognize that the record supports the view that the defendants insensibly terminated the services of the active partners just as the nascent *Analog* had reached the marketing stage. This left Cohen and American with the fruits of the Partners' labors, planning, and creativity, and relieved the defendants of the obligation to share in the profits of the venture. However, our analysis of the case regrettably, but necessarily, is confined by the theory of the plaintiff's complaint, the applicable legal principles and, lamentably for the plaintiff, the absence of a carefully crafted written agreement setting forth the rights and duties of the Partners in the event of a breach of contract by the defendants. Although Cohen's conduct in freezing out Abel and later Zellman may be reprehensible, we must reject Abel's claim.

█ It remains for us to identify the exact nature of the relationship that existed between the former partners and Cohen after the formation of American. The jury found that the Abel partnership entered into a second partnership with Cohen and American. The finding is incorrect as a matter of law on at least two counts. As we have already noted, the Abel partnership was dissolved by operation of law. Moreover, there was no "second partnership" because Abel, Zellman, and Jacobs were never made co-owners of American. The lack of any "joint proprietary interest and a right of mutual control over the subject matter of the enterprise" similarly precludes the existence of a joint venture. *See Keeler v. International Harvester Used Truck Ctr.*, 317 Pa.Super. 244, 246–47, 463 A.2d 1176, 1178 (1983). Rather, we observe that the oral contract between Cohen and the former partners amounted to nothing more than an exchange of the ownership of the *Analog* for Cohen's promise to finance the project, employ Abel and Zellman, and give them and Jacobs thirty

---

**13.** We observe that in *Jefferson Bank v. Davidson*, 354 Pa.Super.Ct. 514, 517–18, 512 A.2d 658, 659 (1986), the Superior Court of Pennsylvania noted that the "existence of a partnership depends upon the intentions of the parties...." We do not read this exposition as a negation of the co-ownership requirement. *See Barbet v. Ostovar, supra*, 417 A.2d at 641.

percent of the profits.[14] Finally, we note that Abel's claim nonetheless fails even under this construction of the agreement because Cohen cannot be liable for wrongful interference with a contract to which he is a party. *Michelson v. Exxon Research and Engineering Company,* 808 F.2d 1005, 1007–08 (3d Cir.1987).[15]

Accordingly, the judgment of the district court will be reversed and the case remanded with directions to grant the defendants' motion for judgment NOV. Each side to bear its own costs.

**14.** We express no opinion as to whether the Statute of Frauds would have precluded enforcement of the oral contract or whether the plaintiff retains a cause of action for his share of lost profits.

**15.** Because of the result we reach, we do not address the remaining contentions of the defendants that the district court committed prejudicial error in refusing to grant them a continuance or a new trial because of evidentiary rulings, prejudicial conduct at trial, or on the ground of newly discovered evidence. Furthermore, we need not reach the defendants' claim that the damages awarded by the jury were speculative as a matter of law.