**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, a national banking association, Appellee in No. 87–1322,**

v.

**HOTEL RITTENHOUSE ASSOCIATES, a Pennsylvania limited partnership, Wolgin, Jack L., Jack L. Wolgin Associates, Inc., a Pennsylvania corporation, both general partners of Hotel Rittenhouse Associates, and Wolgin, Jack L. and Wolgin, Muriel, husband and wife**

v.

**NILSI, N.V. Abohar Investments, N.V. and Khalid Y. Al–Marzook, Jassim Y. Al–Marzook, Faisal Y. Al–Marzook, Fab III Concrete Corporation, proposed intervenor, Appellant in No. 87–1322.**

**FAB III CONCRETE CORPORATION, Appellant in No. 87–1323,**

v.

**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Appellee in No. 87–1323.**

**Nos. 87–1322, 87–1323.**

United States Court of Appeals, Third Circuit.

Argued Nov. 2, 1987.

Decided April 26, 1988.

Leonard J. Bucki (argued), Wolf, Block, Schorr and Solis–Cohen, Philadelphia, Pa., for appellant FAB III Concrete Corp. in Nos. 87–1322 and 1323.

Joseph C. Kohn (argued), Harold E. Kohn, Kohn, Savett, Klein & Graf, P.C., Philadelphia, Pa., for appellee Bank of America Nat. Trust and Sav. Ass'n in Nos. 87–1322 and 1323.

Before SLOVITER, BECKER, and COWEN *, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

■ These consolidated appeals, arising out of a bitterly contested battle over the demise of a building project, raise two discrete procedural questions. The first question we will address is whether a suit by a contractor to enforce an arbitration award against the developer and the bank that financed the project renders the developer an indispensable party pursuant to Fed.R. Civ.P. 19. We hold that, given that the arbitration award is joint and several, the contractor may sue the bank alone and that the developer is not an indispensable party.

■ Second, we must determine whether the contractor may intervene as of right in a foreclosure action by the bank against the developer two years after a final settlement was reached in the action (although the district court retained jurisdiction to settle any disputes arising from the agreement). We hold that given the contractor's diligence in trying to unseal an agreement between the bank and the developer, maintained by the court under seal, the intervention cannot be deemed untimely when the ultimate unsealing gives rise to further proceedings. Nevertheless, we express doubts as to the contractor's underlying ability to intervene as of right, and remand this question to the district court to consider the contractor's status in relation to

---

* At the time this case was argued Judge Cowen was a United States District Judge for the District of New Jersey sitting by designation. On November 16, 1987 he entered on duty as a United States Circuit Judge.

certain escrow accounts held pursuant to the sealed agreement between the bank and the developer.

## I. FACTS AND PROCEDURAL HISTORY

To understand the questions on appeal and the procedural history of the two separate actions that are consolidated before us, it is necessary to review briefly the legal history of the collapse of the Hotel Rittenhouse project, a luxury hotel-apartment project in Center City Philadelphia.[1] Hotel Rittenhouse Associates (HRA), a partnership operated by Jack Wolgin, was the developer for the building project. FAB III Concrete Corporation (FAB) served as a concrete contractor for the project. Bank of America National Trust and Savings Association (the Bank) financed the project. As the project experienced financial difficulties, FAB and other contractors began to receive late payments from HRA. In early 1982 the Bank signed a letter with FAB assuring that it would pay FAB directly for its work. In August, 1982 all payments from the Bank to FAB ceased.

### A. *Bank v. HRA* Action

In June, 1983 the Bank sued to foreclose on the project and HRA counterclaimed alleging, *inter alia*, conspiracy and fraud surrounding the demise of the project. That first suit, which we will call *Bank v. HRA*, was settled, and as part of the court sponsored and supervised settlement, the terms were kept secret. FAB requested that the terms of the agreement be made public. The district court refused, but this court overturned the ruling and required that the terms of the agreement between the Bank and HRA be made public. *Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339 (3d Cir.1986). When the agreement became public, nearly two years after it was entered into, FAB learned that the Bank

had agreed to fund an escrow from which HRA would pay its contractors. In return, HRA promised to indemnify the Bank against contractors' claims. According to this secret agreement, whatever HRA did not pay to the contractor and subcontractors would revert to Jack Wolgin personally. Wolgin also would receive a $1 million bonus for obtaining releases from all subcontractors.[2] FAB contends that during an arbitration arising out of a separate action (the *FAB v. Bank* case discussed below), HRA made claims that have been proved false by the unsealing of the secret agreement in the *Bank v. HRA* litigation. Specifically, FAB argues that: (1) HRA "pled poverty" when in reality a fund existed to pay contractors and that fund has been earning interest; and (2) it is clear from the secret agreement that HRA (contrary to its assertions in arbitration) had never incurred substantial interest claims to the Bank so that its claim against FAB in arbitration to recoup delay damages that HRA allegedly owed the Bank was fraudulent.

On February 17, 1982, five days after it received access to the secret agreement between the Bank and HRA, FAB moved to intervene in the *Bank v. HRA* case in order to claim an equitable right to interest that had been accruing on the escrow fund set aside for the benefit of contractors and subcontractors (including FAB). FAB estimates that the accrued interest exceeds $120,000. FAB particularly desires to intervene in this action because the escrow, upon which FAB wishes to obtain interest, was established pursuant to a negotiated agreement supervised by the court in this case, and the district court retained jurisdiction for all purposes connected with the agreement to settle any disputes arising out of the agreement. The district court denied the motion to intervene as untimely and FAB appeals that denial.

### B. *FAB v. Bank* Action

At the same time that FAB was attempting to unseal the secret agreement in the

---

1. For a fuller discussion of the facts, see *Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339 (3d Cir.1986).

2. Releases have been obtained from all contractors but FAB. The Bank will tender a check for the over $848,000 that FAB secured in the arbitration, if FAB agrees to sign a general release.

*Bank v. HRA* case, FAB initiated a separate suit against the Bank for money still due for its contracting work. This second case, which we will call *FAB v. Bank*, did not include HRA, whose presence in the action would have deprived the court of diversity jurisdiction. *See* 28 U.S.C. § 1332 (1982). When the suit was brought, the Bank made a motion for the inclusion of HRA as an indispensable party. That motion however was never ruled upon.[3] Instead, the district court stayed the *FAB v. Bank* action pending arbitration. At the arbitration proceeding all three parties were present. The Bank and HRA were represented by the same attorney. The arbitrator awarded FAB over $848,000 against the Bank and HRA, plus 6% interest from the date of the award to the date of payment. The Bank refused to pay the award until FAB signed a release of all claims, including state court claims for conspiracy and abuse of process that are still pending. FAB refused to sign a general release and instead returned to the district court to enforce its arbitration award against the Bank. The Bank, however, argued that FAB could not bring suit in federal court to enforce the arbitration award without including HRA because HRA was an indispensable party. The district court agreed and dismissed the action.

The district court noted that FAB had brought claims in Pennsylvania state court and that it could enforce the arbitration award in that forum against both the Bank and HRA.

As a chronological matter we discussed the intervention question first; however, in our legal analysis, we will first address the Rule 19 indispensable party question. We will consider two questions: (1) Can FAB sue the Bank alone to enforce its arbitration award or is HRA an indispensable party to the *FAB v. Bank* litigation?; and (2) Can FAB intervene in the *Bank v. HRA* litigation?

## II. DISMISSAL FOR FAILURE TO JOIN HRA

FAB argues that the district court abused its discretion in holding that HRA is an indispensable party needed for just adjudication of the *FAB v. Bank* action enforcing the arbitration award. We agree.

Rule 19 of the Federal Rules of Civil Procedure governs joinder of necessary and indispensable parties.[4] Rule 19(a) determines whether a party is a necessary party who should be joined in the action. If the answer to that first question is yes,

---

**3.** We note, however, that similar motions by the Bank to join HRA in cases involving other contractors were denied. *See, e.g.,* Order Denying Defendant's Motion to Dismiss for Failure to Join an Indispensable Party, *Pinter–Zwicker Elec. Co. v. Bank of Am. Nat'l Trust and Sav. Ass'n,* Civ. Action No. 84–0993 (E.D.Pa. Aug. 31, 1984). App. at 82a.

**4.** Rule 19 provides in pertinent part:

Joinder of Persons Needed for Just Adjudication

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substan-

tial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party

. . . .

(b) Determination By Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

then the court must do so if feasible. If the answer to the first question is no, however, then the inquiry need go no further. *See Abel v. American Art Analog, Inc.,* 838 F.2d 691, 695 (3d Cir.1988) (foreclosing any further inquiry once the panel "conclude[d] that [absentees] are not necessary parties pursuant to Rule 19(a)").

Rule 19(b) governs the situation in which the court determines that a party must be joined but that joinder cannot be effectuated (as, for example, in our case, where the joinder of HRA would destroy diversity). Where joinder of a Rule 19(a) necessary party is not feasible, the court must decide whether the absent party is "indispensable," and hence that the action cannot go forward.

Even assuming that HRA is a Rule 19(a) necessary party for a just adjudication, which should be joined if feasible,[5] it is clear that HRA cannot be deemed an "indispensable" party.

We note that the equities of the case and the situation of the parties have changed dramatically since the original Rule 19 motion was made. When that motion was first made in the spring of 1984, before the case was stayed for arbitration, the question of liability was still at issue. Now, after the arbitration, the only issue left is enforcement of the award. We agree with FAB that the district court mistakenly decided the 19(b) question as if it were faced with an initial dispute on the merits, and not as an enforcement action against one party to a binding arbitration award against HRA and the Bank, jointly and severally.

■ A defendant's right to contribution or indemnity from an absent non-diverse party does not render that absentee indispensable pursuant to Rule 19. *See Field v. Volkswagenwerk A.G.,* 626 F.2d 293, 298 (3d Cir.1980). In this case, where an agreement already exists for indemnification, the Bank does not allege that it will have any trouble obtaining contribution and we need not worry about any unfairness to the Bank in recovering from HRA for contribution. Furthermore, because HRA and the Bank are joint obligors, HRA will not qualify as an indispensable party. Professor Moore instructs that "all joint obligors should be joined in order that there may be a complete determination of the controversy, provided ... their joinder would not destroy federal jurisdiction." 3A J. Moore, *Moore's Federal Practice* ¶ 19.11, at 19–213 (2d ed. 1986) (footnote omitted). However, if such a joinder would destroy diversity, "the court can proceed without the joinder of all joint obligors." *Id.* at 19–213 to 19–214.

In *Gold v. Johns–Mansville Sales Corp.,* 723 F.2d 1068, 1076 (3d Cir.1983), this court specifically held that an absent tort feasor that is jointly liable to the claimant is not a Rule 19(a) indispensable party. *See* Fed.R. Civ.P. 19(a) advisory committee note ("It should be noted particularly, however, that

5. Under the facts of this case we question whether HRA even clears the first hurdle of Rule 19(a)—that it is a party required for just adjudication. Even though these same parties will litigate other claims before a state court, the 19(a)(1) requirement of "complete relief" arguably can be satisfied in HRA's absence because the parties to the *FAB v. Bank* action can fully litigate the enforcement issue. We observe that the advisory committee note to Rule 19(a) indicates that the question of "complete relief" may not denote final adjudications of all claims between the parties, so long as the relief actually afforded to the parties in the action is meaningful. As the note explains,

[c]lause (1) stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or "hollow" rather than complete relief to the parties before the court. The interests that are being furthered here are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter.

Fed.R.Civ.P. 19(a) advisory committee note to the amended rule. In *Field v. Volkswagenwerk AG,* 626 F.2d 293 (3d Cir.1980), this court cited the advisory committee note and quoted Professor Moore for the proposition that the mere fact that defendant might be required to defend multiple actions is insufficient to require Rule 19 joinder if the parties to the action can obtain meaningful relief and would not confront inconsistent judgments. *Id.* at 299–302 (citing J. Moore, *Moore's Federal Practice* ¶ 19.07–1 (2d ed. 1979)). Because all parties argue over the question of 19(b) indispensability and FAB does not make the Rule 19(a) argument, we will not decide this question.

the description [of "persons to be joined" in the rule] is not at variance with the settled authorities holding that a tortfeasor with the usual joint-and-several liability is merely a permissive party to an action against another with like liability.") (citations omitted). *See also Field*, 626 F.2d at 298 n. 7.

Because the arbitrator issued its decision against HRA and the Bank jointly and severally, we find the posture of this case to be analogous to the situation of tortfeasors who are jointly and severally liable. Indeed, from a policy perspective, this case represents an even more compelling scenario for finding that the absentee is not indispensable. Because liability has already been determined, there is no argument that suing only one of the jointly and severally liable parties will prove a fruitless endeavor.

The Bank, in arguing that HRA is an indispensable party, stresses that we must review the district court decision for abuse of discretion. The Bank recites the tortured history of this case that it believes indicates why HRA is an indispensable party. Specifically, the Bank emphasizes that: (1) HRA and the Bank were both parties to the arbitration; (2) FAB asserted some claims solely against HRA in the arbitration; and (3) HRA agreed in settlement of *Bank v. HRA* to indemnify the Bank. These facts, however, do not overcome the simple truth that in FAB's motion to enforce the joint and several award against the Bank and HRA, HRA was not indispensable. The Bank and HRA can sort out their accounts separately either pursuant to their agreement over which the district court maintained control or perhaps in some other forum.

■ Of the four factors listed in Rule 19(b), *see supra* note 4, the only one that seems to weigh in the Bank's favor is the last one—FAB does indeed possess an alternate forum in state court. That fact alone cannot transform HRA into an indispensable party. *See* 3A J. Moore, *supra*, ¶ 19.07–2[4], at 19–161 ("surely the availability of an alternative forum cannot be the sole basis for dismissing a suit commenced in the federal courts"). We feel satisfied that "equity and good conscience" indicate that this action should continue in the forum of the plaintiff's choice. Fed.R. Civ.P. 19(b). Therefore, we will reverse the district court's order dismissing the action.

## III. INTERVENTION

The district court ruled that FAB's motion to intervene in the *Bank v. HRA* foreclosure case was untimely and that it showed none of the requisite extraordinary circumstances for reopening a case that had been closed for two years.[6] Furthermore, the district court noted that because the *Bank v. HRA* settlement did not provide a specific fund for FAB and did not provide that the court would hold the money for the claims, FAB possesses no actual interest in the litigation that would permit it to intervene.

FAB argues that the extraordinary circumstances are evident: the record was sealed and FAB had no way of knowing

---

**6.** Fed.R.Civ.P. 24 provides in relevant part:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In

exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

(c) Procedure. A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought.

We note that FAB did not specify before the district court which type of intervention (permissive or as of right) it requested. At oral argument, however, FAB's counsel clarified that he was seeking intervention as of right.

what its interests in the case were. Specifically, it had no idea, nor any way of knowing, that the escrow funds existed and that the interest had accumulated on them. FAB argues before us that its special interest in intervening in this action emerges from its equitable claim on the interest accrued on these heretofore secret accounts.[7] FAB points out that it moved to intervene as soon as the information became available and that HRA and the Bank employed tactics of delay in unsealing the record. Additionally, FAB argues that it asserted its interest in the case all along but was consistently rebuffed by the district court. For example, when it moved to unseal the record, the district court informed FAB that the case had nothing to do with FAB. Finally, FAB argues that because the district court retained jurisdiction, the case was still alive as late as June, 1986.

■ The Bank argues that FAB's own account of the facts clearly indicates that FAB knew enough about the arrangements between the Bank and HRA to move to intervene in the *Bank v. HRA* action much earlier, and that the motion to intervene, nearly four years after the *Bank v. HRA* litigation commenced, is too late. Post-judgment intervention may only be permitted in "extraordinary circumstances." *Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania,* 674 F.2d 970, 974 (3d Cir.1982). The Bank maintains that in view of this principle, the district court, which considered FAB's excuse that it waited until the record was unsealed, acted within its discretion when it denied the motion for intervention.

As with the Rule 19 question, we note that we must review the district court's

rejection of FAB's motion to intervene on an abuse of discretion standard. *See Harris v. Pernsley,* 820 F.2d 592, 597 (3d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987). We agree with FAB that given the unusual circumstances in this case—FAB attempted for over two years to unseal the record in the *Bank v. HRA* litigation—it would be unfair to deem an otherwise appropriate motion for intervention as untimely. *See* 7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1916, at 425–26 ("the mere lapse of time by itself does not make an application untimely. The court must weigh the lapse of time in the light of all the circumstances of the case.") (2d ed. 1986) (footnotes omitted). Therefore, to the extent the district court (and the parties) focus on the question of timeliness, we believe they miss the mark.

We do, however, express doubt as to whether FAB can meet the requirements for mandatory intervention pursuant to Fed.R.Civ.P. 24(a). First, we must question whether FAB could be said to have an interest relating to the property in the suit between the Bank and HRA, hence meeting the first requirement of Rule 24(a)(2).[8] To answer this question the parties must address not only substantive questions of Pennsylvania law such as whether FAB would qualify as a third party beneficiary, but also the nature of the agreement between HRA and the Bank, and the district court's role in relation to the escrow fund.

Furthermore, we have been presented with no explanation of how, as a practical matter, events growing out of the settlement agreement between the Bank and HRA would impair or impede FAB's rights.[9] To the extent that FAB can make

7. FAB acknowledges that it can enforce the arbitration award in its separate action against the Bank or in state court. It makes the bare assertion that, because of the alleged fraud of HRA and the Bank, it deserves all the interest accrued on the escrow fund.

8. The district court, in denying FAB's motion to intervene, indicated its belief that the negotiated settlement between the Bank and HRA "does not provide that FAB is entitled to any particular sum of money, nor is any money being held

by [the district] Court for the payment of claims." Although we read its ruling as based on the timeliness question, the district court noted in dicta that it was "unable to perceive any basis for FAB's intervention in this case." App. at 250a.

9. We note that the facts of this case seem markedly different from those of *Merritt Commercial Sav. & Loan, Inc. v. Guinee,* 766 F.2d 850, 855 (4th Cir.1985). In that case, the Fourth Circuit discussed a bank's ability to seek intervention as

an equitable claim on the accrued interest of the escrow accounts,[10] we have not been presented with evidence why, as a practical matter, that equitable claim would be limited to the forum of the *Bank v. HRA* litigation. Indeed, at oral argument, counsel for FAB seemed to concede that intervention in the *Bank v. HRA* litigation is not the only avenue to attaching this interest, but contended instead that intervention was the most direct and logical approach.

Finally, we also note the existence of a separate possible basis for denying the intervention, *viz.*, FAB's failure to comply with the procedural requirements of Rule 24(c). The Bank contends that FAB did not serve a motion to intervene upon the parties stating the grounds for intervention as required by that rule. *See Ryer v. Harrisburg Kohl Bros., Inc.*, 53 F.R.D. 404, 411 (M.D. Pa. 1971) (refusing to discuss whether intervention is proper given would-be intervenor's failure to comply with Rule 24(c)). Given FAB's longstanding desire to investigate the settlement agreement, and the enormous effort it underwent to unseal the record in the *Bank v. HRA* action, FAB's intervention was certainly no surprise. However, we note that many of the lingering questions we have about FAB's right to intervene might have been cleared up had FAB set out its contentions clearly.

Because the district court focused its analysis on the timeliness question, and the parties did the same, the question of whether FAB may intervene as of right was never adequately addressed. Although we have, at this point, been given no indication that the requirements for Rule 24 intervention as of right can be met, we will nevertheless remand this question for further inquiry. The answer to the intervention question depends not only on legal arguments, but also upon the specific

facts of this case concerning the agreement and the escrow fund, matters that are best left to the district court.

## IV. CONCLUSION

For the reasons discussed above, we will reverse the district court's orders and remand for proceedings consistent with this opinion.

of right in a case involving the distribution of an escrow between a county government and a debtor in bankruptcy. The court held that because the bank was a surety on a performance bond posted in favor of the county by the debtor, it was entitled to intervene to compel the county to assert its setoff right against the debtor and thereby reduce the bank's liability to the county. The court stressed, however, that absent such intervention the bank had no other

way to protect its interest. We perceive no comparable inability on the part of FAB to protect its interest, nor has FAB asserted any.

10. We express no opinion as to FAB's ability to recover the interest on the escrow funds, or its ability to recover in excess of the arbitration award.