**IN–TECH MARKETING INCORPORATED, Global Guaranty Distribution, S.A., Raphael J.J. Van Der Cleyen and Wilfried F. Ribbens, Plaintiffs,**

v.

**HASBRO, INC., Milton Bradley Company, Alvin Bojar, Alvin Bojar and Associates, A.W.A.J. Van Den Elshout, Handelsonderneming Elson, B.V., Elson, N.V., and Simone Tyriard, Defendants,**

v.

**Scott M. SHAW, John L. Blankensee, a/k/a Joseph L. Blankensee, and Gerard S. Roos, Additional Defendants on Counterclaims.**

Civ. A. No. 87–2753.

United States District Court,
D. New Jersey.

Feb. 23, 1988.

As Modified June 9, 1988.

Michael R. Needle, Needle & Feldman, Philadelphia, Pa., for plaintiffs.

Kim J. Landsman, Morrison & Foerster, New York City, for defendants Hasbro, Inc. and Milton Bradley Co.

## OPINION

WOLIN, District Judge.

In the underlying action plaintiffs assert that defendants have violated the patent laws of the United States. Defendant now moves (i) to dismiss plaintiffs' claims under Rule 12(b)(7) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") if Lolo Sports, Inc., a non-resident Canadian Corporation, and its principal, Robert Hodgins, are not joined as indispensable parties pursuant to Fed.R.Civ.P. 19 and (ii) that defendant cor-

poration Elson, N.V. should be re-aligned in this action as a plaintiff. Both of these motions are denied for the following reasons.

## A. FACTS

In order to address the motions presently before this court an understanding of the background facts is necessary. The following facts alleged by plaintiffs are taken as true only for purposes of this motion to dismiss. This dispute revolves around the patent rights to a toy consisting of a ball constricted by a platform in the middle attached to either side invented in Belgium by plaintiffs van der Cleyen and Ribbens (the "inventors"). The toy was originally protected under the name "Springbal" by a Belgian patent obtained in March 1969.

In October 1969, the inventors executed a licensing agreement with a Belgian company, Les Usines Fabelty, S.A. ("Fabelty"), pursuant to which Fabelty obtained the right to sell the toy in the United States. Fabelty applied for a United States patent in the name of the inventors in March 1970. In order to facilitate this procedure, the inventors executed a form of assignment (the "Assignment") to Fabelty.

Fabelty then became insolvent in 1972 and went into liquidation; defendant, Simone Tyriard, acted as liquidator. Subsequently, the U.S. patent was issued to Fabelty on February 13, 1973 and the Assignment was also filed with the patent. In 1977, Fabelty was formally liquidated under Belgian law.

In 1985, after the Belgian patents had expired, the toy became immensely popular throughout Europe. One of the companies then selling the toy in Europe under the name "Lolobal" was Handelsonderneming Elson, B.V. ("Elson, B.V."), a Netherlands corporation whose principal is defendant van den Elshout. In May 1985, Elson, B.V. executed an agreement with Global Guaranty Distribution, S.A. ("Global") in which Global would distribute Lolobals on an exclusive basis throughout the United States and Canada. Sometime during the summer of 1985 Global learned of Fabelty's U.S. patent for the toy.

Global then entered into a patent assignment with the inventors and with Elson, B.V. which provided that Global would exclusively distribute the Lolobal in exchange for certain royalties. In addition, either Elson, B.V. or Van Den Elshout or Elson, N.V. (hereinafter collectively referred to as "Elson") or some combination thereof obtained from Tyriard any residual rights still held by the liquidated Fabelty estate which, under the terms of the Global/Elson, B.V. agreement, it was obligated to transfer or hold for the benefit of Global. It is thus that Global claims Fabelty's United States patent rights.

Global and Robert E. Hodgins, the incorporator of Lolo Sports, Inc., executed both an exclusive distribution agreement within Canada and an exclusive manufacturing agreement within North America for the benefit of the soon to be formed Lolo Sports, Inc. ("Lolo Sports").[1] Thereafter, claiming that the contract with Lolo Sports was no longer valid,[2] Global appointed In-Tech Marketing, Inc., ("In-Tech") as its exclusive American distributor. Global and In-Tech are also presently involved in litigation in Canada with Lolo Sports to restrain Lolo Sports from the further manufacture or distribution of the Lolobal and also to restrain Lolo Sports from marketing the toy outside Canada.[3]

Elson, then became insolvent and it executed a transfer of the Fabelty/Tyriad assignment to Alvin Bojar and Associates ("Bojar") in exchange for financial assistance. Bojar subsequently licensed those rights to Hasbro, Inc. ("Hasbro"). Hasbro also obtained an assignment of any rights that may have vested in the shareholders,

---

**1.** The distribution and manufacturing agreements were executed on August 7, 1985 and Global was notified by Telex on August 20, 1985 that Lolo Sports had indeed been formed.

**2.** Global asserts that Lolo Sports has breached its contracts by refusing to pay certain indebtedness incurred to Global after receiving a shipment of Lolobals.

**3.** Apparently Lolo Sports had sold the Lolobal at certain trade conventions in the United States.

or heirs thereof, of Fabelty in February 1987. Thus, Hasbro contends that it, and not Global/In–Tech, owns the rights to the Fabelty patent.

## B. DISCUSSION

This court will first address defendants' motion to dismiss for failure to join an indispensable party and then it will address defendants' motion to re-align a party.

■ 1. *Indispensable Party.* "Rule 19(a) [Fed.R.Civ.P.] guarantees that all parties interested in a particular lawsuit have both a chance to affect the outcome, and the benefit of finality as to the judgment rendered." *Abel v. American Art Analog, Inc.,* 838 F.2d 691, 694 (3rd Cir.1988) (citations omitted). In determining whether to dismiss an action for failure to join an indispensable party, the court must undertake a two step analysis under Fed.R.Civ.P. 19. Under Rule 19, the threshold question is whether the person in question is "necessary", or whether:

(1) in his absence complete relief cannot be accorded among those already parties, or

(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Fed.R.Civ.P. 19(a). Only if a person is deemed "necessary" under Rule 19(a), must the court undertake the second step of the analysis. Upon determining that a presently unjoined person is necessary, the court must either "order that [the person] be made a party," *id.* or, if such a person is not subject to the court's jurisdiction,[4] "the Court shall determine whether in equity and good conscience the action should proceed among the parties before it, or [the action] should be dismissed...." Fed.R. Civ.P. 19(b). The factors to be considered are:

First, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which ... the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; and fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b). Thus, only after the court has considered both steps of the analysis—and it has determined that the case must be dismissed—may a party properly be deemed indispensable. *Field v. Volkswagenwerk AG,* 626 F.2d 293, 300 (3d Cir.1980).[5]

In the instant case, the Hasbro defendants assert that (1) Lolo Sports, Inc. and its principal Robert E. Hodgins (collectively, "Lolo Sports") are necessary parties to plaintiff's action, (2) Lolo Sports has not yet been joined as a party and (3) the Hasbro defendants risk exposure to multiple liability and a separate law suit from Lolo Sports should the Global/In–Tech plaintiffs win the underlying patent rights suit. Thus, claim defendants, under Fed.R. Civ.P. 19(b) Lolo Sports is an indispensable party and the complaint must be dismissed under Fed.R.Civ.P. 12(b)(7) unless and until Lolo Sports is joined.[6]

---

4. Lolo Sports, Inc. is a Canadian company and it is unclear whether this court has jurisdiction over it.

5. "The labeling of a party as 'indispensable' is the consequence, not the measure, of the evaluation." *Inventive Music Ltd. v. Cohen,* 564 F.Supp. 914, 921 (D.N.J.1982).

6. The crux of this motion is that Lolo Sports is a necessary party under Rule 19(a). There is no question that on August 7, 1985 Global granted Lolo Sports "the exclusive right to import, distribute, promote, advertise, market and sell" within Canada the toy covered by the U.S. patent. *See* Distribution Agreement, Exhibit A, of the Affidavit of Kim Landsman ("Landsman Affidavit"). There is also no question that on August 7, 1985 Global granted Lolo Sports "the exclusive right to manufacture and supply for distribution [the toy] within North America." *See* Manufacturing Agreement, Landsman Affidavit at Exhibit A. Presently the status of these agreements is under litigation in Canada and

Defendants argue that under *Independent Wireless Tel. Co. v. Radio Corp. of America*, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926), in an action under the patent laws, "both the owner and the exclusive licensee are generally necessary parties in the action in equity." *Id.* at 466, 46 S.Ct. at 168.[7] Plaintiffs do not dispute this point, but rather they argue that the Global/Lolo Sports agreements create nothing more than a "mere licensee" relationship as opposed to an actual assignment of the patent. The distinction, for purposes of this motion, is crucial:

> When the patentee grants an exclusive right to make, use, and vend, either the entire patent or an undivided portion thereof, or of an exclusive right to make, use, and vend within a specific geographical area, the transaction is considered an assignment. This is true despite language in the instrument to the contrary ... on the other hand, if the patentee conveys only the exclusive right to make and vend, but not the right to use, the grant is a license, notwithstanding any language in the instrument to the contrary.

Wright, Miller & Kane, *Federal Practice and Procedure: Civ.2d* § 1614 pp. 210–211. (2nd Ed.1986) (footnotes omitted).

Albeit technical, this analysis derives directly from the particular nature of patent law as set forth by the Supreme Court in the leading case of *Waterman v. Mackenzie*, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1890):

> The monopoly thus granted is one entire thing, and cannot be divided into parts, except as authorized by [patent law]. The patentee or his assigns may, by instrument in writing, assign, grant and convey, either 1st, the whole patent, comprising the exclusive right to make, use and vend the invention throughout the United States; or, 2nd, an individual part or share of that exclusive right; or 3rd, the exclusive right under the patent within and throughout a specified part of the United States.... Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement.

*Id.* at 255, 11 S.Ct. at 335. The Supreme Court, however, also notes that characterization of rights under this analysis does not depend on the nomenclature of the particular agreement, but rather "upon the legal effect of its provisions". *Id.* at 256, 11 S.Ct. at 335. This analysis has been interpreted to mean that "generally, a transferee of rights under a patent is not an indispensable party to a suit protesting its infringement unless the transfer *is so inclusive and encompassing as to amount to a complete assignment*." *Meese v. Eaton Manufacturing Company*, 35 F.R.D. 162, 167 (N.D. Ohio 1964) (emphasis supplied). In other words, "[t]he non-exclusive licensee has no property interest in the patent monopoly," but "[a]n exclusive licensee, on the other hand, has the promise of the patent owner that others shall be excluded from practicing the patent within the field of use for which the license was given." *Sanofi, S.A. v. Med–Tech Veterinarian Products, Inc.*, 565 F.Supp. 931, 936–937 (D.N.J.1983). *See, e.g., Gould v. Control Laser Corporation*, 462 F.Supp. 685, 687 (M.D.Fla.1978) (licensee must be joined under Rule 19 where

Hasbro contends that pending their resolution Lolo Sports maintains an interest relating to the subject of this action pursuant to Rule 19(a)(2). *See Takeda v. Northwestern Life Insurance Co.*, 765 F.2d 815, 821 (9th Cir.1985) (emphasizing that Fed.R.Civ.P. 19 also speaks to potential harm).

7. It should be pointed out that the issue in *Independent Wireless* was whether in a suit originally brought by the exclusive licensee, the patent-owner subsequently needed be joined as an indispensable party; in this case, however,

the alleged patent owner is bringing the action. This distinction was noted in *Comptograph Co. v. Universal Accountant Machine Co.*:

> In cases where the licensee has sought to maintain an action for infringement in his own name, the courts have held that the action must be brought in the name of the owner of the patent, or the owner of the patent must be joined in the suit. [citing *Waterman v. Mackenzie, infra*]. I know of no authority that requires that the owner of a patent must join his licensee as a party complainant.

economic realties indicate he is assignee) *aff'd in part and appeal dismissed in part,* 650 F.2d 617 (5th Cir.1981).

As already noted, the issue as to whether the Global/Lolo Sports agreements are still effective is a question presently pending in the Canadian judicial system.[8] Assuming for purposes of this motion that these agreements are still valid, the question before this court is whether in an action brought by the alleged patent owner, an exclusive manufacturer and/or distributor is a necessary party in that action.[9] It appears that this question has been answered by different courts with varying results.

Some courts have summarily held that the patent owner is the only necessary party to the action. For example, in *Famous Music Corporation v. Maholias,* 53 F.R.D. 364 (E.D.Wisc.1971), the alleged owner of certain copyrighted music brought an analogous action for copyright infringement in which the defendant moved for dismissal unless plaintiff's licensing agent was joined under Fed.R.Civ.P. 19(a) on the grounds that "complete determination could not be had without [the agent's] presence...." *Id.* at 364. The court summarily denied defendant's motion because the principal plaintiff, the copyright owner, was the proper party and defendant could cite no authority to the court upon which to base an order joining the licensing agent. *Id.* at 365. On the other hand, in *Norvell v. McGraw–Edison Company,* 270 F.Supp. 57 (E.D.Wisc.1967) the same district court noted that because plaintiff's licensee was an "interested party which will be affected by any decree which affects that patent [the licensee] should be joined as a party to th[e] lawsuit...." *Id.* at 58 (citing Fed.R. Civ.P. 19(a)) (other citations omitted).

However, because joinder of the licensee seemed feasible (the *Norvell* court clearly had jurisdiction over the parties), the court so ordered and thereby effectively sidestepped the issue of indispensability under Rule 19(b).

Indispensability under Rule 19(b) was analyzed in *Rainville Company, Inc. v. Consupak, Inc.,* 407 F.Supp. 221 (D.N.J.1976). The court noted that because of (1) the prejudicial effects to both the absent party and the defendant as a result of the possibility of multiple lawsuits and (2) the fact that neither party proffered a suitable form of relief, the action must be dismissed unless and until joinder could be affected. *Id.* at 225. *Rainville,* however, is readily distinguishable from the instant case; the *Rainville* court notes that the absent party is the patent owner in the licensee's action for patent infringement.[10] In the case presently before the court, however, the absent party is the licensee.

Probably the case most analogous to the instant action is that of *Holliday v. Long Manufacturing Company,* 18 F.R.D. 45 (E.D.N.C.1955). In that case, defendant (an alleged patent infringer) also moved to dismiss for owner-plaintiff's failure to join an indispensable party—a licensee with the exclusive rights to manufacture and sell the patented invention. In partly denying defendant's motion, the court first cautioned: "As to whether the exclusive licensee is a necessary or indispensable party, there is a difference of opinion."[11] 18 F.R. D. at 48. And despite acknowledging the argument that "if necessary to protect the rights of all parties, the licensee should be joined[,]" the court ultimately concluded that "the sounder rule is that an exclusive licensee who falls outside the definition of an assignee in *Waterman v. Mackenzie* is

---

142 F. 539, 545 (C.C.N.D.Ill.1906).

**8.** *See supra* note 6.

**9.** Defendant argues that despite the clear language of the Global/Lolo Sports agreements Lolo Sports, and not In–Tech, also retains the exclusive distribution rights in the United States. *See* Landsmen aff., Exhibit C. *But see supra* note 6 (quoting relevant language of the Global/Lolo Sports agreements).

**10.** Moreover, the *Rainville* court specifically declines to rule on whether the plaintiff-licensee even rose to the status of an exclusive licensee. The court even hints at the possibility that plaintiff's underlying license agreement may have been terminated. 407 F.Supp. at 224.

**11.** The court's treatment of the "necessary" and "indispensability" as one concept is probably due to the fact that this opinion was written prior to the 1966 amendment of Fed.R.Civ.P. 19.

not an indispensable party plaintiff in an infringement suit brought by the patent owner." *Id.* (emphasis supplied).[12] The *Holliday* court premised this holding on the basis that "even though [the licensee] takes no part in a suit for an injunction he is adequately represented by the patentee." 18 F.R.D. at 49.

The *Holliday* court then went on to note that (1) the exclusive licensee had an interest in the outcome of the litigation, (2) if plaintiff won, then defendants might be subject to a subsequent action by the unjoined party and (3) the unjoined exclusive licensee should be in a position to assist plaintiff. The *Holliday* court, notwithstanding its holding that the exclusive licensee was not an indispensable party, under the pre–1966 formulation of Rule 19(b), ordered joinder anyway so that all the proper parties could be brought before the court. The critical aspect of *Holliday* was that the unjoined party was clearly subject to the court's jurisdiction. 18 F.R.D. at 49.[13] *See supra, Norvell v. McGraw–Edison Company,* 270 F.Supp. at 58 (ordering necessary joinder of "party which should be joined").

In conclusion, despite the fact that Lolo Sports may well have an interest in the outcome of this litigation, this court, in adopting a conjunctive interpretation of *Waterman v. Mackenzie* and its progeny,[14] finds that Lolo Sports is not possessed of the requisite facets of the patent in question to render it a necessary party under Fed.R.Civ.P. 19(a).[15] In light of this holding, the court need not reach the issue of indispensability under Fed.R.Civ.P. 19(b). *See, e.g., American Art Analog, supra,* at 695. ("Because we conclude that [the unjoined parties] are not necessary parties pursuant to Rule 19(a), we need not determine whether the factors articulated in Rule 19(b) compel us to dismiss the action....").

■ **2.** *Motion for Re–Alignment.* This court will now examine defendant's motion to re-align defendant Elson, N.V.[16] as a plaintiff pursuant to Fed.R.Civ.P. 21. Rule 21 provides that:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the Court or motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Defendant Hasbro claims that Gerard J. Roos, the President of plaintiff Global,[17] controls defendant Elson, N.V. by definition under operation of Netherland Antilles law and thus he is in the anomolous situation of suing himself. In support of its motion defendant cites *Indianapolis v. Chase National Bank* for the proposition that it is this court's duty to "look beyond the pleadings and arrange the parties according to their sides in the dispute." 314 U.S. 63, 69, 62 S.Ct. 15, 17, 86 L.Ed. 47 (1941), quoting *Dawson v. Columbia Ave-*

---

**12.** It should be noted that in this motion plaintiffs and defendants strongly disagree as to the interpretation of that which constitutes a "mere license" under the *Waterman v. Mackenzie* formulation. Plaintiffs argue that anything less than the exclusive right to make, use *and* sell reduces the status of the agreement to that of a mere license. In other words, plaintiffs imply a conjunctive standard under the *Mackenzie* test. On the other hand, defendants argue that post-*Mackenzie* decisions require exclusivity as to only *one* of the three patent interests, thus imparting a disjunctive interpretation to the *Mackenzie* standard.

**13.** In this case, there is no showing as to whether Lolo Sports is subject to this court's jurisdiction.

**14.** *See supra* note 12 and accompanying text (discussing *Waterman* ).

**15.** Defendant asserts that if Lolo Sports should prevail in its Canadian litigation and Hasbro should also lose to Global in the patent infringement action, defendant will then liable to a second suit from Lolo Sports. This may be so, but because "no further suits between the plaintiff[s] and defendant[ ] are possible ... any subsequent liability would be independent of that determined here." *American Art Analog, supra,* at 695.

**16.** Elson, N.V. is a Netherlands Antilles corporation organized to receive royalties due Elson, B.V. under agreements with Global.

**17.** *See* affidavit of Gerard J. Roos appended to plaintiff Global's Memorandum in Opposition to Defendant's Motions.

*nue Saving Fund, Safe Deposit, Title & Trust Co.,* 197 U.S. 178, 180, 25 S.Ct. 420, 421, 49 L.Ed. 713 (1905). This court notes that the re-alignment issue in *Dawson,* however, specifically addressed "the alignment of parties for purposes of determining diversity [jurisdiction]...." 314 U.S. at 70, 62 S.Ct. at 17.[18]

In the instant case, unlike *Dawson,* original jurisdiction lies in this court under federal patent law, not under diversity of citizenship. Moreover, it appears that defendant Elson, N.V. is wholly owned by defendant Elson, B.V. Thus, even when "looking beyond the pleadings", this court can find no basis upon which to realign the parties at this juncture.[19]

### C. CONCLUSION

For all of the aforementioned reasons, defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(7) is DENIED. Additionally, defendants' motion to re-align defendant Elson, N.V. as a plaintiff is DENIED.

An Order in conformity with this Opinion is to be submitted by plaintiffs.

---

**18.** Realignment in such a case would operate to preclude diversity jurisdiction. *See, e.g., Wolfe v. United Artists Corp.,* 583 F.Supp. 52, 57 (E.D. Pa.1983) (dismissal for lack of diversity jurisdiction).

**19.** However, should facts be presented to this court which suggest some reason for change, Rule 21 permits this Court, *sua sponte* to re-align *any* party at *any* time.